### OF THE

## STATE OF ARIZONA

### FROM MAY 19, 1917, TO JULY 19, 1918.

[Criminal No. 426. Filed May 19, 1917.]

[164 Pac. 1179.]

## J. J. ELLIOTT, Appellant, v. STATE, Respondent.

1. INTOXICATING LIQUORS—"PERMIT."—To "permit" the unlawful use of intoxicating liquors by the proprietor of a business implies his knowledge and consent and acquiescence.

2. INTOXICATING LIQUORS—PRINCIPLES—STATUTE.—The proprietor of a soft drink place was not liable for the unlawful sale of intoxicating liquors by his employee, although committed in his place of business, unless such unlawful act was directed, or knowingly assented to, or acquiesced in, or permitted by the employer.

   [As to liability of licensee for illegal sale of intoxicating liquors by his servant without instructions, see note in Ann. Cas. 1912A, 1109.]

3. CRIMINAL LAW—INSTRUCTIONS—REPETITION.—Refusal of proper instruction asked was not ground for reversal, where an instruction given was considered by court to cover the same ground.

4. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—OTHER SALES.—In a prosecution for the illegal sale of intoxicating liquors by an employee of defendant, evidence of other sales of intoxicating liquors by such employee both before and after the sale charged was properly admitted to show knowledge, consent and acquiescence in the sales by the defendant.

5. CRIMINAL LAW—INSTRUCTIONS.—In a prosecution for sale of intoxicating liquors by an employee of the defendant, an instruction was requested that evidence had been admitted of sales other than the one charged, and verdict should not be rendered against defendants or either of them by reason of such other sales, and that the material sale is that alleged to have been made on a certain date. The court gave this instruction, adding thereto: "Evidence of other sales

was admitted for the purpose merely of aiding in determining whether or not there was a sale on the date alleged." *Held,* that the instruction as requested and as modified was too general as a definition of the purpose of admitting evidence of other sales.

6. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.—In a prosecution for the illegal sale of intoxicating liquors by an employee of defendant, although a conviction could not be had upon other sales, evidence of other sales not personally made by defendant were competent to show scienter or knowledge on his part; it being a reasonable and fair inference that if liquor was frequently disposed of at his place of business, he must have known of it.

7. CRIMINAL LAW—REVIEW—PREJUDICIAL ERROR.—In the view that the defendant's establishment was making it a business to sell liquor, the modification of the instruction made by the court, while not strictly an accurate statement of the law, was not prejudicial.

8. CRIMINAL LAW—REVIEW—REVERSIBLE ERROR.—In a prosecution for the illegal sale of intoxicating liquors by an employee of defendant, where a person during the trial sent a whiskey glass containing liquor to defendant's attorney, who immediately disclaimed knowledge of the performance, and upon inquiry from the court, the person stated that it was ginger ale, and that he brought it for the defendant, who then drank the liquor, and the court later called the person for examination, and fined him for contempt after his statement that he wanted the jury to see that ginger ale looked like whiskey, and that his purpose was to influence them in behalf of his defendant, the refusal of the court to excuse the jury while such person was being examined was not reversible error, since it is probable that the jury were less prejudiced by the explanation of the act than they would have been had they been left to guess or draw on their imaginations for an explanation.

9. INTOXICATING LIQUORS—EVIDENCE—SUFFICIENCY.—In a prosecution for the illegal sale of intoxicating liquors by an employee of the defendant, evidence *held* to support a verdict of guilty.

APPEAL from a judgment of the Superior Court of the county of Maricopa. R. C. Stanford, Judge. Affirmed.

Messrs. Struckmeyer & Jenckes, Mr. A. S. Hawkins and Mr. R. G. Langmade, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. Geo. W. Harben and Mr. R. W. Kramer, Assistant Attorneys General, for the State.

ROSS, J.—The appellant Elliott and one Henry Wright were jointly informed against for violating the prohibition

law. They were tried together and both convicted. Elliott appeals, assigning as error the giving by the court of the following two instructions:

"1. I charge you, gentlemen of the jury, that all persons who are concerned in the commission of a crime are guilty of its commission. In order to be guilty it is not necessary that one should actually commit the crime. It is sufficient if he aids and abets therein, whether he be present or absent. If a proprietor of a drinking establishment permits intoxicating liquor therein to be sold in violation of the law, he is guilty the same as the one who actually sold the liquor.

"2. The court instructs the jury that there has been evidence admitted in this cause of sales other than the one herein charged, and that you are not to render any verdict against the defendants, or either of them, by reason of any such other sales. The sale that is material in this case is the sale that is alleged to have been made on October 6, 1916. Evidence of other sales was admitted for the purpose merely of aiding you in determining whether or not there was a sale on the date alleged."

And the refusal to give the following instruction:

"3. The court instructs the jury that Elliott is not liable for the unlawful acts of Henry Wright, if any, though such unlawful act, if any, was committed in Elliott's business, unless such unlawful act was directed or knowingly assented to or acquiesced in by said Elliott."

It is necessary to set forth some of the facts developed in the evidence in order intelligently to get the viewpoint of the appellant, and to determine if there is merit in his contentions. The evidence shows that appellant was the owner and proprietor of a soft drink place known as the Health Office in the city of Phoenix. Henry Wright, the other defendant, was employed as a clerk in the Health Office. It is without controversy that the sale of liquor charged in the information was made by Wright in the absence of appellant, the owner and proprietor of the Health Office.

The first instruction above complained of finds justification, if at all, upon the theory that it was not necessary to the guilt of appellant that he should have personally made the sale; that the law holds him responsible for any sale made by his clerk or agent, providing it was with the knowledge or consent or acquiescence of the appellant. The question

was as to whether Wright in making the sale was acting as the agent of the appellant, or whether he was acting without the scope of his authority and instructions and in violation thereof. In the latter case the act would have been Wright's only, and the guilt would attach to him, but if the sale was made with the permission of appellant, he was *particeps criminis* in the transaction, and is as guilty as if he had personally made the sale. In such case both Wright and appellant were principals as, under our law, the common-law distinction of accessory before the fact and principal is abolished, and all who aid and abet in the commission of a crime or, not being present, have advised and encouraged its commission, are principals. Sections 27 and 955, Penal Code 1913.

To "permit" the unlawful sale of intoxicating liquors by the proprietor of a business implies knowledge, consent, and acquiescence. The Standard Dictionary defines "permit" as follows:

"1. To allow by tacit consent or by not hindering; take no steps to prevent; consent tacitly to; suffer.

"2. To grant leave to by express consent or authorization; empower expressly; authorize."

The correlative instruction No. 3 above, refused by the court, undoubtedly states a correct principle of law, and we think should properly have been given to the jury. Its refusal, however, in view of the first instruction which the court doubtless conceived covered the same ground, is not such error as would justify a reversal of the case. We believe from the first instruction the jury must have understood before a conviction of appellant could be had that it should be found he counseled, advised, and permitted the sale.

Evidence of other sales of intoxicating liquor by Henry Wright both before and after the date of the sale charged in the information was before the jury. These sales, if the evidence is to be believed, were as much a part of the business of the Health Office as the sale of soft drinks. The chances to get liquor apparently depended upon the belief of Wright that the purchaser would not divulge the source of his supply. These other sales were properly admitted for the purpose of showing knowledge, consent, or acquiescence in the sales by the appellant. Joyce on Intoxicating Liquor, § 688. It was this evidence that called for instruction No. 2. This instruc-

tion was given upon the request of appellant, except that the court added the last sentence thereof:

"Evidence of other sales was admitted for the purpose merely of aiding you in determining whether or not there was a sale on the date alleged."

The instruction neither as requested nor as modified under the present facts correctly defined the purpose of admitting evidence of other sales than the one charged. It is true, as stated in the instruction, that a conviction could not be had upon other sales. It is equally true that the other sales, not having been personally made by the appellant, were competent to show scienter or knowledge upon his part, it being a reasonable and fair inference that if liquor was being frequently disposed of in the Health Office the proprietor thereof presumably was familiar with it. The instruction requested and modified was a too general statement of the law applicable to the facts; it was not as specific as it should have been.

In the view that the Health Office was making it a business to sell liquor, and there was some evidence to that effect, the modification of the instruction made by the court, while not a strictly accurate statement of the law, was hardly misleading or at least prejudicial. We think it is but a common sense proposition that evidence of other sales in a place of the kind of appellant's would aid a jury in determining whether the specific sale charged was proved, it being not an incident of, but growing out of, the course of the business. 23 Cyc. 269, 270.

In the course of the trial, while a witness was testifying, a man by the name of E. A. Locke gave to the court bailiff a small whiskey glass containing liquor and requested him to give it to appellant's attorney The bailiff set the whiskey glass in front of appellant's attorney, stating that it had been sent to him, whereupon appellant's attorney stated: "I don't understand such a performance, your honor. I have no part in it." Upon inquiry from the court as to what the drink was and who sent it in, Locke, from the rear of the courtroom answered: "It is ginger ale. . . . I sent it in to Jack" (meaning Elliott). The appellant thereupon drank the liquor in the glass. A little later, and after the witness then on the stand was excused, the court called Locke to the bar to inquire of him the purpose of his sending the whisky glass

of liquor into the courtroom. Appellant's attorney asked that the jury be excused during the examination, which request was refused by the court. Locke admitted, upon being questioned, that he wanted the jury to have an ocular demonstration that ginger ale looked like whiskey and that his purpose was to influence the jury in behalf of his friend, the appellant. Several questions were asked Locke by the court, after which a fine was imposed upon Locke for contempt, the appellant's attorney all the time objecting to the proceeding being had in the presence of the jury. The court several times remarked, in substance, that Locke had, no doubt, hurt the appellant's case before the jury; that its purpose was to hurt the prosecution's case and to help the defendant's case. These remarks, it is contended, were prejudicial to the appellant.

The trial court accepted the statement of the attorney for appellant that he had no part in the episode of introducing the glass of liquor, as true, and exonerated him from all blame. From our knowledge of the high character and learning of the attorney, we feel certain that such a thing would not be countenanced by him, and that if he had been advised of it in advance he would have frowned upon it with indignation and resentment. We cannot say so much, however, for the appellant. Neither at the time of the episode nor during the contempt proceedings nor at any time during the trial was it shown or attempted to be shown that the appellant was free from inducing or causing the conduct of Locke. It is possible that he had no previous knowledge of Locke's intentions or purpose, but it is hardly probable that Locke would assume to do what he did without first consulting the appellant. The very hurried manner in which the appellant drank the liquid from the glass would indicate that he knew from where it came, and why, and that he understood it to be necessary for him to drink the liquid in the presence of the jury to carry out his part of the demonstration. If the scheme was planned or acquiesced in by appellant and prejudice resulted therefrom, he only is to blame.

It may be that the jury should have been excused while Locke was examined and punished in contempt. The jury no doubt was as much surprised at the appearance of this mysterious glass of liquor in the midst of the trial as was the court and all of the attorneys. Something had happened that

needed explanation. We do not believe the letting the jury into the knowledge of who had sent the liquor into the court-room and his purpose in so doing could have prejudiced the jury against the appellant any more than if the incident had been silently passed by leaving them to guess or to draw on their imaginations for an explanation.

It was not so much the carrying on of the contempt proceedings against Locke in the presence of the jury as the incident that provoked the proceedings that may have influenced the jury's verdict. To give this episode the force and effect of prejudicial error demanding a reversal of the case would be an invitation to defendants in criminal cases to induce error in order to avoid the binding effect of a jury's verdict.

Independent of this incident a careful examination of the evidence satisfies us that the jury could not reasonably, under their oaths, have returned any other verdict than one of guilty.

Judgment is affirmed.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.