182 P.2d 90

**STATE v. CARTER et al.**

No. 969.

Supreme Court of Arizona.

June 16, 1947.

Stockton & Karam and Wilmot W. Trew, all of Phoenix (Laurens L. Henderson, of Phoenix, of counsel), for appellants.

John L. Sullivan, Atty. Gen., John W. Rood, Chief Asst. Atty. Gen., and Francis J. Donofrio, Co. Atty., and Warren L. McCarthy, Deputy Co. Atty., both of Phoenix, for appellee.

LA PRADE, Justice.

The appellants, defendants below, were found guilty by a jury of the crime of statutory rape and judgment followed. Each of defendants was sentenced to be confined in the Arizona State Prison at Florence for a period of not less than twenty and not more than twenty-five years. The evidence presented to the jury shows a very sordid state of affairs. The testimony discloses that defendant Frank Carter had used the prosecutrix, a girl of fifteen years, as his mistress for approximately three years prior to the offense charged in the information. The specific act was alleged to have occurred on January 12, 1946. Defendant Christine Griffith, mother of prosecutrix Betty Griffith, was convicted on the theory that she aided, abetted, and assisted in the commission of the offense by Frank Carter. Defendants for a period of years had been living together as husband and wife, though not married, their residence being a small frame house near Tempe, Arizona. The house was divided into four rooms without any doors; cloth curtains were hung in lieu of doors. The walls were so thin that it was possible to hear the slightest noise emanating from any particular room. A Mrs. Zam, an adult woman, was temporarily residing in the home with defendants and prosecutrix, and was present in the house when the offense occurred. On the evening in question prosecutrix testified that she was called by Frank Carter to his bedroom. She pretended that she did not hear him. After repeated calls, defendant Christine Griffith came into Betty's bedroom and admonished her to heed Frank's call. The transcript of evidence is replete with testimony to the effect that Christine not only knew of the act on this particular night, but had frequently theretofore coerced her daughter into repairing to the bed of Frank Carter so that he might accomplish an act of sexual intercourse with her. Such was the common course of conduct in this household.

**14**

We see no occasion to recite all the lurid details contained in the record. Suffice it to say that this brief summarization of the facts is amply supported by direct testimony and corroborating circumstances.

These conclusions as to the sufficiency of the evidence dispose of Frank Carter's ground of appeal claiming error on the part of the trial court in denying his motion for a directed verdict at the conclusion of the state's case. Defendants did not avail themselves of the opportunity that was theirs to take the witness stand and deny the accusation. The daughter Betty testified that in the first instance she had been seduced by defendant Frank Carter. The mother later became aware of the demands of Carter to have access to the daughter. In this behalf the daughter attempted to excuse her mother by explaining that she and her mother had thus acceded to the demands of Carter on the ground that it was necessary to maintain any semblance of peace and quietude in the home. It appeared that Carter was very much addicted to the use of intoxicating liquor and for a good portion of each day was intoxicated. During these times he became very belligerent and abusive, which abuse often resulted in physical violence to Christine.

One of the grounds for appeal is that the sentences were excessive. The crime of rape under the statute, section 43-4901, A.C.A. 1939, may be accomplished under a number of different circumstances. By this section an act of sexual intercourse accomplished with a female under the age of eighteen years, not the wife of the perpetrator, is rape even though consented to by the female, and subjects the perpetrator to penal punishment. Ordinarily the word "rape" suggests force or violence. Forcible rape is an act of sexual intercourse accomplished with a woman against her will by force and violence. The essential element of guilt in such a situation is the outrage to the person and feelings of the female. Under our statute, section 43-4901, supra, both forcible rape and "consent" rape are punishable by imprisonment in the state prison for life or for any term of years not less than five.

The trial judge had opportunity to observe the defendants, their demeanor and attitude, and that of associates, relatives, and friends who appeared with them, some of whom testified. Had these observations been available to us, we might have concluded that defendants were not devoid of all refinement and had sufficient intelligence and character to realize the gravity of their offense. If such were the facts the trial judge might readily have assessed a severe punishment upon them. The cold record suggests that defendants were not immoral, but rather without morals, and unaware of their derelictions. Only the mother Christine Griffith knows the burdens she has had to bear. If these defendants are dullards and devoid of the ordinary concepts of decency and morals, it might be said that the sentences are excessive. The law as

enacted by the people contemplates that no cruel or unusual punishment shall be visited upon anyone, including a person ignorant of the commonly accepted code of morals through no fault of his own and unaware of his nonconformity. Oftentimes such a person has to be confined for the protection of himself and society. Not having been present to observe these defendants, their relatives, associates, and friends, we are not in a position to say that the sentences are excessive, harsh, or unconscionable.

Defendant Christine Griffith also challenges the sufficiency of the evidence to sustain her conviction. We see no merit in this contention for what we have already said disposes of it. As additional ground for appeal she contends that a female cannot be convicted of the crime of rape, this upon the theory that only a male can have sexual intercourse with a female. The answer to this contention is that by section 43-116, A.C.A. 1939, the distinction between principals and accessories before the fact has been abolished. Elliott v. State, 19 Ariz. 1, 164 P. 1179; Browning v. State, 53 Ariz. 174, 87 P.2d 112. Now all persons concerned in the commission of a crime whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or not being present aid, advise, and encourage its commission, are principals in any crime so committed. Section 44-1107, A.C.A. 1939, provides that "* * * All persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall be prosecuted, tried and punished as principals, * * *." These provisions render our law in accord with the general rule that "a woman who aids, assists, procures, or counsels a man in the commission of rape is guilty of the offense, either as a principal in the first or second degree, or accessory before the fact." 5 A.L.R. 782, at page 785, and cases cited therein. See also 44 Am. Jur., Rape, section 33.

Defendant Christine Griffith, as one ground of her appeal, seriously contends that the court erred in its instruction relative to those who might be convicted as principals on the theory that they aided and abetted in the commission of the crime. The instruction given reads as follows:

"You are further instructed that the statute provides that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, are guilty as principals in the crime so committed. Therefore, should you find from the evidence in this case beyond a reasonable doubt that Frank Carter, named in the information, at the time and place and in the manner and under the circumstances set forth in the information, did commit the crime charged in the information, and you likewise believe beyond a reasonable doubt from the evidence in this case that the defendant Christine Carter was then and

there present or, *not being present, had advised and encouraged its commission, aiding and abetting the said Frank Carter* in the commission of the said crime, then you should find the defendant Christine Carter also guilty of the crime charged, and if you do not so find, your verdict should be not guilty." (Arrangement of phraseology complained of indicated by italicized words.)

(Christine was charged under the name of Christine Carter. It was not until after the trial and before sentence that it was discovered that the defendants were not married.)

It is the contention of appellant Christine that this instruction authorized her conviction by virtue of her mere presence. She insists that this instruction made it mandatory upon the jury to find her guilty if it believed that she was present even though it did believe that she did not aid or abet in the commission of the crime. It is her contention that the instruction is in the disjunctive, and that the only condition appearing before the word "or" is "if the defendant Christine Carter was then and there present." She insists that the second alternative appearing after the word "or" relates to the alternative of Christine Carter's not being present. Grammatically analyzed, the instruction as it appears on paper may be susceptible of the interpretation insisted upon by appellant. This particular instruction was not submitted in writing nor was it prepared by the court in writing. The only record that we have of it is in the reporter's transcript. The punctuation was inserted by the court reporter. Had the instruction been punctuated by the court reporter in the following manner "and you likewise believe beyond a reasonable doubt from the evidence in this case that the defendant Christine Carter was then and there present —or not being present had advised and encouraged its commission—aiding and abetting the said Frank Carter in the commission of the said crime, then you should find the defendant Christine Carter also guilty of the crime charged," with a dash before the word "or" and a dash after the word "commission," then it would have been apparent that the trial court in reading the instruction paused and hesitated and inserted into the sentence the alternative phrase "or not being present had advised and encouraged its commission" which manner of reading would not have had the effect of breaking into the continuity of the sentence. The sentence would then have said "and you likewise believe beyond a reasonable doubt from the evidence in this case that the defendant Christine Carter was then there present aiding and abetting the said Frank Carter in the commission of the crime." The learned trial judge was not unaware of the law which requires aiding and abetting on the part of defendant if present as a necessary predicate to support a conviction. Had the evidence disclosed nothing other than presence, the court would undoubtedly have granted Christine's motion for a directed verdict. Had it not done so, we would have no hesitancy in reversing the conviction. In view of the fact that the evi-

dence conclusively showed presence, knowledge of the offense, and connivance in its commission, we think the instruction correctly conveyed to the jury the law applicable, and was not prejudicially erroneous, however grammatically analyzed. The assigment of error in this regard goes to the form of the instruction rather than the substance thereof.

Another assignment of error complains of the court's instruction defining reasonable doubt. The court in the first instance defined reasonable doubt as follows:

"A reasonable doubt is an actual doubt that you are conscious of after having gone over in your minds the entire case and given consideration to all the testimony and every part thereof. If you then feel uncertain and not fully convinced that the defendants, or either of them, are guilty, and believe that you are acting in a reasonable manner, and if you believe that a reasonable man in any matter of like importance would hesitate to act because of such a doubt as you are conscious of having, that is a reasonable doubt, of which the defendants, or either of them, are entitled to have the benefit."

After the main charge to the jury had been completed and after the court, addressing counsel, asked if counsel had "any requests or further exceptions," defense counsel responded as follows:

"It appears to the defendants that the Court includes in the instruction on rea-

sonable doubt the business or important transaction theory. We except to that portion of the instruction because important transactions, or business transactions of importance, are not the proper test as to what constitutes reasonable doubt. The expression was used, 'important matters.' "

Then the following proceedings took place.

"The Court: You may have your objection, of course. (Addressing the jury) Gentlemen of the jury, I am further going to instruct you, give you this Court's definition of reasonable doubt, in view of the fact that my instruction heretofore given you may be confusing or misleading. This is the Court's definition of reasonable doubt: A reasonable doubt within the meaning of the law is a doubt which has some reason for its basis. It does not mean a doubt based upon groundless conjecture, but a reasonable doubt is such *a doubt as would cause a reasonably prudent and considerate man to pause before acting in the graver and more important affairs of life. It is a doubt for which there exists a reason arising either from the evidence or a want of evidence.* It is not a captious or imaginary doubt, but a doubt for which there exists a reason, as I have just mentioned." (The claimed objectionable language italicized for emphasis and clarity.)

Appellants insist that the first instruction given by the court was withdrawn by giving of the second instruction defining

reasonable doubt. In this position we concur. Appellants contend that the instruction as given is erroneous in two respects: First, it seeks to apply the "business" test to a criminal case; and, second, it requires the jury to find a reason for the doubt. Appellants argue that requiring the jury to use as its yardstick a method for determining reasonable doubt based upon what one would do in the graver and more important affairs of life does not amount to a charge that the jury must be convinced in a criminal case beyond a reasonable doubt of the guilt of the accused. Citing Paddock v. United States, 9 Cir., 79 F.2d 872, People v. Ah Sing, 51 Cal. 372; State Rover, 11 Nev. 343; Palmerston v. Territory, 3 Wyo. 333, 23 P. 73. It is necessary to analyze just what the courts are referring to when they speak of applying the "business test" in a criminal case when referring to the term "reasonable doubt." In Palmerston v. Territory, supra, cited by appellants, the objectionable instruction was in part as follows:

" ' * * * The proof is to be deemed sufficient when the evidence is sufficient to impress the judgment of ordinarily prudent men with a conviction on which they would *act* in an important affair of their own.' " (Emphasis supplied.)

In the case of State v. Rover, 11 Nev. 343, reasonable doubt was held to be erroneously defined as follows:

" * * * By reasonable doubt is ordinarily meant such a one as would *govern or control* you in your business transactions or usual pursuits of life." (Emphasis supplied.)

In the Paddock case, supra, the court, in instructing the jury on the doctrine of reasonable doubt, alluded to the rule in a number of paragraphs and in response to inquiries from a juror. It is not convenient here to set out the entire instructions given in the Paddock case or the various responses of the judge to the inquiries of the juror. In analyzing the instruction, the circuit court said [79 F.2d 877]:

" * * * To tell the jury in effect that reasonable doubt has no more significance in deciding a criminal case than the doubt by a juror as to whether the price offered to him for a piece of property is as much as he can expect to get for it, is in our mind to entirely eliminate the doctrine of reasonable doubt from the consideration of the jury."

It will thus be seen from these cases that each juror was instructed that he could say that he was satisfied beyond a reasonable doubt when he was satisfied to the extent that he would be willing to take the step that he was about to take if the affair were his own. The instruction in the instant case did not authorize a juror to gauge the matter by what he might personally do if the affair were his own. Some men are more reckless than others; some would require little or no proof or established facts if they had to act or arrive at some judgment in their own affairs. This instruction advised a juror that he

had a reasonable doubt if he could say to himself that the doubt that he was conscious of having was such as would cause a reasonably prudent and considerate man not to *act*, but to pause before acting, in the graver and more important affairs of life.

The words *hesitate to act* and *to pause before acting* in their ordinary usage have an entirely different meaning than to *act* or to *govern* or *control*. As said by the Supreme Court of Colorado in Minich v. People, 8 Colo. 440, 9 P. 4, 13:

" * * * There is a vast difference between *hesitating* or *pausing* and *acting*. The doubt which leads a man to hesitate or pause may be very far from being such a doubt as would control his action and we think that if, in the important transactions of life, no doubt arises in the mind of a reasonable and prudent man which would lead him to hesitate, or to pause and consider of his future action, that doubt is not such a reasonable doubt as would justify a jury in returning a verdict of acquittal."

See also People v. Lenhardt, 340 Ill. 538, 173 N.E. 155.

Thus, under the court's instruction under consideration, when stated conversely, to be without a reasonable doubt the jurors' convictions would have to be such that they would not pause before acting in the graver and more important affairs of life.

The Supreme Court of the United States in Hopt v. Utah, 120 U.S. 430, 7 S.Ct. 614, 618, 30 L.Ed. 708, approved an instruction upon the subject of reasonable doubt which contained the following:

" ' * * * but if, * * * you can truthfully say that you have an abiding conviction of the defendant's guilt, such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, you have no reasonable doubt.' "

In commenting upon this instruction, approved by the Supreme Court of the United States, the Circuit Court in the Paddock case said:

" * * * While the instruction contained the phrase 'the more weighty and important matters relating to your own affairs,' it was no doubt approved because it was a part of an instruction which had fully explained the doctrine of reasonable doubt. We do not believe that court will approve the business test when segregated from the other elements which were included in the instruction approved in Hopt v. Utah, supra. * * * "

We do not consider that the instruction as given announced the so-called "business test" in the sense propounded by appellants and as discussed in numerous cases which are collated under Decennial Digests, Criminal Law, ☞789(12) in the American Digest System. In any event the court in the instant case included other elements which pertained to the doctrine of reasonable doubt. We have repeatedly held that the instructions must be considered as a

whole, and that no case will be reversed because of some isolated paragraph or portion of an instruction which standing alone might be misleading. Tate v. State, 56 Ariz. 194, 106 P.2d 487. The instructions as a whole adequately protected the rights of defendants in that the court instructed the jury to arrive at a just and proper verdict; to ascertain and declare the truth; that the law raises no presumption against the defendants; that every presumption of the law is in favor of their innocence until guilty beyond a reasonable doubt; that the accusation of rape is easy to make and difficult to defend; that the circumstances shown in the evidence must not only be consistent with guilt but inconsistent with every reasonable hypothesis of innocence; and admonished the jury to examine the evidence with caution. The court even instructed the jury that it had to "be satisfied to a moral certainty and beyond a reasonable doubt that the case as made out by the evidence and corroborating evidence * * *." In this respect the court required more proof than was necessary. In the early case of Territory v. Barth, 1877, 2 Ariz. 319, 15 P. 673, 676, this court said:

"* * * To say that proof to a moral certainty is required, is misleading. Whatever may be the meaning of those words to scholastics, to a common mind it requires a much higher degree of proof than is necessary in a criminal case. To require proof to a moral certainty would make it impossible to enforce the criminal law. In a civil cause, a mere preponderance of evidence governs the verdict; in a criminal case, the mind of the jury must be convinced of the truth of the charge. That is all. *To be convinced means that the evidence must be such that the reason sees no doubt left of the defendant's guilt. The law does not deal with doubts that the imagination may conjure up. The mind may not run outside the evidence in search for doubts; the reason must detect and point them out in the evidence alone, and direct the mind to stop short of being convinced. When the mind so hesitates from conviction there exists a reasonable doubt. If the mind, on the other hand, rests satisfied and convinced, all reasonable doubt is removed. It is that condition of mind as leads reasonable men in the important affairs of life to act with confidence and not to pause and hesitate and say 'I am not satisfied,' after a consideration of all the facts bearing upon the proposition.* Ordinary men can and do understand this; but to ask for a moral certainty startles the mind with doubt and uncertainty which may not be removed by any evidence, however convincing to the reason. Such is not the demand of the law. (Citing cases.)"

See Territory v. Clanton, 3 Ariz. 1, 20 P. 94; United States v. Romero, 4 Ariz. 193, 35 P. 1059.

The instruction complained of is essentially the same as the italicized portions of

the above instruction which refers to the "important affairs of life"; that condition of mind that causes one "not to pause and hesitate," and requires that "reason must detect" from the evidence the facts or want of facts that lack the quality of convincing the mind. The instruction in the instant case is a distillation of the instruction in the Barth case. The instruction withdrawn and the one given by the trial court to our personal knowledge have been stock instructions in the state for the past thirty years. Our decisions do not disclose that they have ever been challenged, and the court on its own motion has never questioned the soundness of this definition of "reasonable doubt." In view of the confusion that exists in the reported cases attempting to define reasonable doubt, of which there are countless hundreds (see Vol. 36 Words and Phrases, Perm.Ed., Reasonable Doubt) and the paucity of words in the English language to define words which really define themselves, we are satisfied that the ends of justice will be subserved by adhering to the attempted definition long since made and never deviated from.

▬▬ The second theory of error in the court's definition of reasonable doubt is that it required the jury to find a reason for the doubt and thereby shifted the burden of proof to defendants to their prejudice. In support of this theory appellants cite Siberry v. State, 133 Ind. 677, 33 N.E.

681; Commonwealth v. Baker, 93 Pa. Super. 360, and other cases. In the Siberry case the language was [133 Ind. 677, 33 N. E. 684]:

"* * * A reasonable doubt is such a doubt as the jury are able to give a reason for. * * *"

To charge a jury that a reasonable doubt is such a doubt as the jury are able to give a reason for shifts the burden of proof to the defendant. If a juror must convict unless he can affirmatively state a reason for his doubt, then the burden is on the defendant. The instructions in this case taken as a whole are not open to the interpretation that a juror is required to be able to state or assign a reason for a doubt, nor does it lead the juror to believe that a conviction is necessary if he is unable to do so. When the court instructed the jury that a reasonable doubt is a doubt for which there exists a reason arising either from the evidence or want of evidence, he was distinguishing reasonable doubt from groundless conjecture, for the court then said:

"* * * It is not a captious or imaginary doubt, but a doubt for which there exists a reason, as I have just mentioned."

The law that a doubt to authorize an acquittal must be reasonable and not captious or imaginary was first announced by this court in the Barth case, supra, and again in Foster v. Territory, 1899, 6 Ariz. 240, 56 P. 738, 739, wherein the court approved

22

an instruction which in part read as follows:

"* * * A doubt, to authorize an acquittal, must be a reasonable one, and it must arise from a careful and candid investigation of all the evidence in the case; and unless the doubt is a reasonable one, and does so arise, it will not be sufficient, in law, to authorize a verdict of not guilty."

Other grounds of error have been assigned but we think they are without merit and feel there is no occasion to take them up seriatim. After careful examination of the whole case, we see no error which merits a reversal.

The judgments are affirmed.

STANFORD, C. J., and UDALL, J., concur.