## DAWLEY v. UNITED STATES.
### No. 6171.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 3, 1951.

Decided Feb. 1, 1951.

Robert J. Heberle, Richmond, Va., for appellant.

John P. Harper, Asst. U. S. Atty., Norfolk, Va. (George R. Humrickhouse, U. S. Atty., Richmond, Va., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WARLICK, District Judge.

SOPER, Circuit Judge.

This appeal is from a conviction under Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), for the fraudulent evasion of income taxes for the years 1946 and 1947. The indictment contained three counts. The first charged that for the year 1945 the defendant reported a net income of $3,545.64 and a tax due of $520.17 whereas his actual net income was $33,239.11 on which a tax of $13,059 was due. The second count charged that for the year 1946 the defendant reported a net income of $2,952.12 and a tax due of $397.83 whereas his actual net income was $36,774.01 on which a tax of $15,839.52 was due. The third count charged that for the

year 1947 the defendant reported a net income of $4,836.63 and that the tax thereon was $661 whereas his actual net income was $17,953.47 on which a tax of $5,155.40 was due. Upon the motion of the defendant the lower court granted a directed verdict of acquittal on the first count, finding as a matter of law that the evidence was insufficient to sustain a verdict of guilty. The court denied similar motions on the remaining two counts and submitted the case to the jury. Verdicts of guilty were returned on both counts and the court fined the defendant $1,500 on each count or a total of $3,000. The principal question on appeal is whether there was sufficient evidence to warrant a jury determination of guilt under the second and third counts.

R. Avery Dawley, the taxpayer, was engaged in the retail furniture business at Kilmarnock, Virginia. He purchased the business on September 15, 1944 for $4,000 in cash and a $4,000 note, explaining to the vendor that he did not have the money to pay for it completely. He rented the building which housed his business until June, 1946 when he purchased it for $12,-000. He carried on a successful business selling approximately half of his goods for cash and half on the installment plan. Sales of the latter type were recorded on an accounts receivable ledger which purported to show each sale, the initial payment, payments on account and the balance due. The defendant employed an independent bookkeeper, outside his office, named John Ennis, to keep additional records on information furnished in daily written reports of the defendant, check stubs and cancelled checks. Ennis used these records to prepare the defendant's tax returns, monthly statements and balance sheets. A third set of records in the defendant's handwriting were kept in the defendant's safe. They consisted of small loose leaf notebook pages, which covered the years 1945 and 1946, and contained, inter alia, figures showing daily time sales and cash sales, as well as the annual totals, inventory figures, balance sheets and the total net worth of the defendant. Neither the accounts receivable ledger nor the loose leaf pages were known to Ennis when he prepared the defendant's tax returns.

Upon inquiry and after search, these records and certain cancelled checks and check stubs were all that the agent could find to compute the defendant's income. Relying on the loose leaf pages in particular, the agent recomputed the defendant's income on a cash basis for the years 1945 and 1946, comparing it with that disclosed in the tax returns for those years. The records for 1947 being unsatisfactory, the agent prepared a net worth statement showing increases in net worth for the years 1945, 1946 and 1947 in order to arrive at the approximate income for 1947 and to substantiate the computations of income already made for the years 1945 and 1946. We concern ourselves with the evidence relating to the years 1946 and 1947.

The government's proof for the year 1946 centers primarily on a comparison of the defendant's figures on his tax return with those disclosed in his private loose leaf notebook pages. There was little difference between the figures for costs of goods sold and other expenses in the taxpayer's return and in the government's computation. When totaled they came to $64,400.02 in the return and $62,359.50 in the computation. However, the taxpayer's return showed sales in the amount of only $67,352.14 and a net profit of $2,952.12 whereas the loose leaf pages showed cash and time sales of $99,133.51 and a net profit of $36,774.01 according to the government's computation.

The defendant attacks this calculation first on the ground that the agent computed the tax for 1946 on the cash basis and did not compute it on the installment basis, as is permissible for a person who regularly sells on the installment plan under Section 44 of the Internal Revenue Code, 26 U.S.C.A. § 44. The agent did not use the installment basis since he was under the erroneous impression that such a taxpayer may not use this basis without the permission of the Commissioner of Internal Revenue, and also because he was told by the defendant that he did not use the installment basis but reported his income partly on cash and partly on accrual basis. It is

obvious that the agent's mistake of fact is immaterial since a person in the installment business may report his income either on a cash or an accrual basis if he so desires. Hence it is only necessary to determine whether there was substantial evidence to support the correctness of the agent's computation, that is to say, whether there was substantial evidence to take the case to the jury. Since the agent's figures approximated those used in the defendant's tax return for 1946 except for two items, one showing the amount of the inventory at the end of the year and the other the amount of sales during the year, we confine ourselves to these items. The amount of the inventory at the end of the year used in the agent's calculation exceeded that shown on the taxpayer's return by the sum of approximately $3,000; but the use of the larger figure was justified since it was taken from a detailed inventory set out in the notebook in the defendant's safe. The sales figure, amounting to $99,133.51, for the year was taken from the same source and purported to be the sum total of cash sales and installment sales during the year. It is objected that insofar as the total consists of money due the defendant on installment sales made but unpaid in 1946, it exceeded the cash receipts for the year and thereby erroneously exaggerated the taxable income. The taxpayer's notebook, however, showed that the total amounts receivable at the end of 1946 amounted to $18,551.51 and his accounts receivable ledger showed the sum of $17,973.35 as accounts receivable at that time. If the larger of these figures is deducted from the total sales they will be reduced to the sum of $80,582.00 and the net profit for 1946 will be reduced to $18,-222.50 as compared with a profit of $2,952.-12 shown by his return. Admittedly these various computations of net profit for the year 1946 leave room for error; but as we stated in Bell v. United States, 4 Cir., 185 F.2d 302, 308, " * * * the absence of proof of the exact amounts of unreported income is not fatal if there is substantial evidence tending to prove the defendant's guilt beyond a reasonable doubt." It is obvious that the evidence is sufficient to support the charge contained in the indictment and this conclusion is fortified by the fact that the calculation in the taxpayer's notebook, which we may assume was made on the accrual basis, shows a net profit for the year of $37,062.34. Moreover, it is highly significant that the taxpayer offered no evidence to dispute the correctness of the agent's computation.

■ The proof offered by the government to sustain the third count of the indictment in respect to the taxable income of the defendant for the year 1947 consists primarily of a comparison of his net worth at the beginning and at the end of the year, as calculated by the government agent. This method is of necessity an approximation which has been approved by this and other courts and was resorted to in this case because of the absence of accurate records, which it was the duty of the defendant to keep. Bell v. United States, supra. After extensive investigation the agent found that the assets of the defendant, bank deposits, savings bonds, inventory, accounts receivable, real estate, &c., less his liabilities, totalled $71,935.86 as of December 31, 1946 and $86,719.85 as of December 31, 1947. To the increase in net worth of $14,874.92 was added an estimated cost of living, insurance premiums and federal income taxes paid in the total amount of $3,078.55. The adjusted income as thus determined came to $17,953.47 whereas the defendant reported only $4,-836.63.

■ This computation is criticized chiefly because it includes accounts receivable and also because it does not include accounts payable. It seems axiomatic that in the computation of the net worth of the taxpayer monies owing him as well as monies payable by him must be included. Accounts payable were omitted by the agent because the defendant stated to him that he paid his bills promptly and carried no accounts payable forward. No such accounts were included in the estimate of net worth prepared by the defendant's bookkeeper Ennis and put in evidence by the United States in this case. Accounts receivable were properly included since they were outstanding in considerable amounts at the beginning and end of the year. The decision in

Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831, upon which the defendant relies, has no bearing in this connection since it related to the exclusion of unrealized and unreported profits from invested capital in computing the excess profits tax of a corporation engaged in installment sales.

The computation of the agent was supported by the defendant himself and by his own records. He was furnished a copy of the computation and after an examination of it stated that it was substantially correct. Moreover, the records prepared by Ennis showed a net worth of $34,047.84 at the beginning and $53,252.05 at the end of 1947, or an increase in net worth of $19,204.21 for the year, as compared with a reported profit of $4,836.63. There was thus substantial evidence to support the verdict of the jury on this count.

Affirmed.