**HOOPER v. UNITED STATES.**
No. 4749.

United States Court of Appeals, Tenth Circuit.
May 4, 1954.

Rehearing Denied Dec. 8, 1954.

686

Irving J. Hayutin, Denver, Colo., for appellant.

Clifford C. Chittim, Asst. U. S. Atty., Boulder, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON, Circuit Judge.

PHILLIPS, Chief Judge.

Hooper was charged by an indictment containing six counts with violations of 26 U.S.C.A. § 145(b). The first count charged that Hooper wilfully and knowingly attempted to defeat and evade a large part of the income tax due and owing by him to the United States for the calendar year 1946 by filing with the Collector of Internal Revenue a false and fraudulent income tax return, wherein he stated that his net income for such calendar year was $12,558.05 and that the amount of tax due and owing thereon was $2,889.96, whereas he knew his net income for such year was $33,-715.65 and the income tax due the United States thereon was $13,870.16. The remaining counts involved the years 1947, 1948, 1949, 1950 and 1951, respectively, and the charges therein were substantially like the charge in the first count, except as to the stated amount of income received and of tax due and owing thereon and the actual income received and the tax due and owing thereon.

Hooper filed a motion for a bill of particulars, asking that the United States be required to set forth the general source or sources of income alleged in Counts 1 to 6, inclusive, to be in excess of the amounts of income stated in the returns.

Hooper was tried, convicted and sentenced, and has appealed.

■ A motion for a bill of particulars is addressed to the sound discretion of the trial court and the denial thereof does not constitute reversible error in

the absence of a showing of abuse of discretion.[1]

■ The Government presented its proof under the net worth and expenditures method, for each of the years 1945 to 1951, inclusive. The evidence adduced at the trial showed that Hooper failed to keep accurate and adequate books and records and that they failed in many particulars to reflect taxable income actually received. It was impossible for the Government, either from such books or records or from information furnished by Hooper, to determine the exact source of much of the income reflected by an increase in net worth. Prior to return of the indictment, Hooper and his attorneys conferred at length with a Special Agent for the Bureau of Internal Revenue and later conferred with an Enforcement Counsel for the Denver District of the Bureau. In the course of these conferences, Hooper and his attorneys learned that the Government contended the alleged unreported income arose from the operation of Hooper's several related or associated businesses in Denver. Having acquired that information in that manner, and there being nothing in the record to indicate that Hooper was taken by surprise by the Government's evidence, or was unprepared to present his defense, there is no basis for the contention that the denial of the motion constituted an abuse of discretion.

■ By virtue of 26 U.S.C.A. § 54 (a) and Supplement to Regulations 111—Income Tax, § 29.54–1, it was the duty of Hooper to keep permanent books of account or records that would be sufficient to establish the amount of gross income and the deductions, credits and other matters required to be shown in his income tax returns for the tax years involved. That Hooper failed to do. It was, therefore, proper for the Government to resort to the net worth method of establishing his income for the years 1946 to 1951, inclusive.[2]

1. Rose v. United States, 10 Cir., 128 F. 2d 622, 624, certiorari denied 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524.

2. Bell v. United States, 4 Cir., 185 F.2d 302, 308, certiorari denied 340 U.S. 930,

In Holland v. United States, 10 Cir., 209 F.2d 516, 519, 522, we stated the requirements with respect to the proof required in a net worth case as follows:

"It is of course incumbent upon the government to prove to a reasonable degree of accuracy the net worth of the taxpayer at the beginning of the prosecution period, otherwise there could be no foundation for the hypothesis that the established increased net worth represented unreported current income. But, the 'government is not required to prove a negative or to refute all possible speculation' as to the source of increased net worth. Gariepy v. United States, 6 Cir., 189 F.2d 459, 463; see also Schuermann v. United States, 8 Cir., 174 F.2d 397; Leeby v. United States, 8 Cir., 192 F.2d 331. One bent on income tax evasion cannot be expected to make a record of his unreported income, indeed, the disposition is toward concealment. The government is not required to go beyond records reasonably available in order to foreclose any permissible inference that the unexplained excess expenditures in any taxable year were derived from sources other than current income. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546.

*    *    *    *    *    *

"It is not incumbent upon the government to prove the exact amounts of the unreported income, it is sufficient to show that it was substantial and willful."[3]

■ Hooper contends that numerous assets were omitted from the opening net worth statement. The record discloses that all of the asset items claimed to have been omitted, with two excep-

tions, in amounts established by competent evidence, were included in the opening net worth statement. One item claimed to have been omitted was undeposited cash in an unspecified amount in excess of $10,000. The opening statement credited $400 of undeposited cash. Hooper, in the presence of his counsel, stated to Revenue Agents that he did not keep any large sums of cash in his safe and that it had been his custom since he had been in business to pay his bills and his employees in cash and to deposit any remaining moneys in banks. He corroborated that statement in an affidavit submitted to the Bureau of Internal Revenue. He further stated that he kept from $300 to $400 in the safe to operate his business. While at the trial Hooper testified that he kept large amounts in his safe, up to $12,000 in cash, with which to cash checks, the Government was justified on the basis of his statements and admissions to include only $400 in the opening net worth statement.

■ The second item claimed to have been omitted consisted of alleged repayments of loans. Hooper told the Revenue Agents that at the time of his discharge from the Army in 1918 many persons owed him money, "maybe five or six thousand dollars." Later, in an affidavit submitted to the Bureau of Internal Revenue, he stated that after his discharge and prior to 1927, he had loaned out between $18,000 and $20,000 and that one of his debtors repaid him $8,000 "in 1945 or 1946," another $6,000 in "1946 and 1947," and another $4,000 "in 1946 or 1947," and that all of such debtors had died since making such payments. Taking into consideration the fact that such alleged loans and repayments were not reflected by any books or records or supported by any other cor-

71 S.Ct. 492, 95 L.Ed. 671; Dawley v. United States, 4 Cir., 186 F.2d 978, 980; Gariepy v. United States, 6 Cir., 189 F. 2d 459, 461; 26 U.S.C.A. § 41.

3. Bell v. United States, 4 Cir., 185 F.2d 302, 308–309, certiorari denied 340 U. S. 930, 71 S.Ct. 492, 95 L.Ed. 671; Jela-

za v. United States, 4 Cir., 179 F.2d 202; United States v. Johnson, 319 U.S. 503, 517–518, 63 S.Ct. 1233; United States v. Rosenblum, 7 Cir., 176 F.2d 321, 330, certiorari denied 338 U.S. 893, 70 S.Ct. 239, 94 L.Ed. 548; Graves v. United States, 10 Cir., 191 F.2d 579, 582.

roborating evidence, the long periods that elapsed between the time the alleged loans were said to have been made, and the time a portion of them were said to have been repaid, and other circumstances, we think the Government was justified in omitting such items from the opening net worth statement.

The evidence adduced by the Government consisted in the main of income tax returns, bank records, a financial statement and an affidavit made by Hooper; and of proof of income received from take-offs from extensive gambling operations in the club rooms owned and operated by Hooper, the receipt of income from the bar, ballroom, billiard parlor, and hotel operated by Hooper, the making of large expenditures for personal use, a system of bookkeeping which bore earmarks of deliberate incompleteness, inaccuracy and fraud, statements by Hooper in the course of interviews with the Special Agents from the Bureau of Internal Revenue, and of statements made by him in the course of an interview with the Enforcement Counsel for the Bureau. In addition to maintaining a system of books which were incomplete and bore evidences of fraud, Hooper did not keep a regular bank account upon which he drew checks in payment of current expenditures or outlays made in connection with his extensive business operations. Instead, he made numerous payments, some large and some small, in cash or with checks which he had received from others.

In the affidavit referred to above, Hooper admitted that from 1942, on, he received income which he did not report, approximating $4,000 to $8,000 annually, from persons to whom he furnished money to make wagers. He kept no written records of such transactions. He undertook to excuse his failure to report such income by the statement that he did not believe it constituted taxable income.

■ Considered in its totality, the evidence met the requirements laid down in the Holland case. It established the net worth of Hooper at the beginning of each taxable year in question, the increased net worth at the end of each year, and expenditures for personal purposes during each year far in excess of the net income reported, and that the increase in the net worth and the expenditures came from current income.

■ We conclude that Hooper was not entitled to a directed verdict of not guilty and that the verdict and judgment are adequately supported by competent evidence.

The phrase in 26 U.S.C.A. § 145(b), "attempts in any manner to evade or defeat any tax imposed by this chapter" means that a taxpayer, well knowing that he is legally obligated to pay a tax, knowingly and with a specific wrongful intent and purpose, undertakes to evade such tax. The act must be done wilfully and knowingly, as distinguished from that done as the result of accident, mistake, neglect, or because of a bona fide belief that the income involved is not taxable.[4] However, direct proof of the requisite wrongful intent and purpose is not necessary. It may be inferred from the defendant's actions.[5]

In his charge to the jury, the court, in part, said:

"The grand jury charges that he acted wilfully. Wilfully, ladies and gentlemen of the jury, means purposefully, means knowingly, means intentionally; it does not mean by inadvertence or mistake, through ignorance, neglect.

"The grand jury charges that he attempted to evade and defeat the collection of his tax by filing false and fraudulent income tax returns,

4. United States v. Martell, 3 Cir., 199 F.2d 670, 672; Spies v. United States, 317 U. S. 492, 497, 498, 63 S.Ct. 364, 87 L.Ed. 418; Wardlaw v. United States, 5 Cir., 203 F.2d 884; Hargrove v. United States, 5 Cir., 67 F.2d 820, 823, 90 A.L.R. 1276.

5. Norwitt v. United States, 9 Cir., 195 F. 2d 127, 132, certiorari denied 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635.

well knowing that they understated his income.

\* \* \* \* \* \*

"\* \* \* it is for you to determine, ladies and gentlemen of the jury, whether or not the Government has proved facts from which it may fairly and reasonably be inferred that the defendant knew what he was doing and knew that he was understating the income and that he was doing what he did wilfully, as distinguished from mistakenly or ignorantly \* \* \*."

■ We are of the opinion that the charge correctly and adequately informed the jury of the meaning of the word "wilful," as we have defined it, and that the requested instruction on wilfulness was properly denied.

■ After accurately stating the elements of each offense charged in the several counts of the indictment, the court charged the jury that the burden of proof rested on the Government to produce evidence which the jurors believed and which satisfied their minds beyond a reasonable doubt of the existence of every one of the essential and material elements of the offenses charged, and that the defendant was presumed to be innocent until the Government produced evidence which the jurors believed and which satisfied their minds beyond a reasonable doubt of the defendant's guilt. In defining the term "reasonable doubt" the court in the charge said:

"I mean a doubt based upon reason. I mean a substantial doubt, as distinguished from a flimsy one. I mean a significant, an important doubt, of the kind that you ladies and gentlemen might be willing to act upon in the more important affairs of your own lives."

Counsel for Hooper objected to such instruction on the ground that it tended to favor the prosecution. He wholly failed to point out wherein the instruction was inaccurate or incomplete.[6] Moreover, an instruction that a reasonable doubt is one based on reason, especially when given in connection with an instruction distinguishing between a reasonable doubt and a nonsubstantial doubt or a mere possibility of innocence is not improper;[7] an instruction that a reasonable doubt is a substantial one, as opposed to a captious or possible doubt, is not erroneous;[8] and an instruction that a reasonable doubt is one upon which the jurors would be willing to act in matters of importance to them is not erroneous.[9]

With respect to other matters, the charge of the court properly, fairly and adequately covered the issues in the case. Accordingly, we conclude that the instructions requested by Hooper were properly refused.

Hooper's challenge to the constitutionality of 26 U.S.C.A. § 145(b) is so obviously without substance that we do not think it merits extended discussion.

Affirmed.

---

6. Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., in part provides: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto \* \* \*, stating distinctly the matter to which he objects and the grounds of his objection."

7. Murphy v. United States, 3 Cir., 33 F. 2d 896, certiorari denied 280 U.S. 584, 50 S.Ct. 35, 74 L.Ed. 634; Colbeck v. United States, 7 Cir., 10 F.2d 401, 404, certiorari denied 271 U.S. 662, 46 S.Ct. 474, 70 L.Ed. 1138; Freeman v. United States, 9 Cir., 158 F.2d 891, 896, certiorari denied 331 U.S. 805, 67 S.Ct. 1187,

91 L.Ed. 1827; Hopt v. People of Utah, 120 U.S. 430, 439–441, 7 S.Ct. 614, 30 L. Ed. 708.

8. Hancock v. State, 196 Ga. 351, 26 S.E.2d 760, 763, 147 A.L.R. 1042; State v. Fox, 116 Kan. 180, 225 P. 1042; Soper v. State, 22 Okl.Cr. 27, 208 P. 1044, 1047; 23 C.J.S., Criminal Law, § 1274, p. 845.

9. State v. Carter, 66 Ariz. 12, 182 P.2d 90, 93–95; Lambert v. State, 193 Md. 551, 69 A.2d 461, 464, 465; Soper v. State, 22 Okl.Cr. 27, 208 P. 1044, 1047; Miles v. United States, 103 U.S. 304, 309, 26 L. Ed. 481; Hopt v. People of Utah, 120 U.S. 430, 439–441, 7 S.Ct. 614.