522 P.2d 1091

**STATE of Arizona, Appellee,**

v.

**Roman Cosay ADRIAN, Appellant.**

**No. 2742.**

Supreme Court of Arizona, In Banc.

June 4, 1974.

Rehearing Denied July 2, 1974.

Gary K. Nelson, Atty. Gen., by Grove M. Callison, Former Asst. Atty. Gen., Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Richard L. Thompson, Deputy Public Defender, Phoenix, for appellant.

STRUCKMEYER, Justice.

Roman Cosay Adrian was convicted at a trial by jury of two counts of rape and three counts of kidnapping with intent to rape. He appeals.

On the evening of August 13, 1972, three sisters, Virginia Soto, age 31, Mary Gutierrez, age 23, and Esperanza Gutierrez, age 18, attended a dance at the Riverside Ballroom in Phoenix. At about 1:00 A.M. on August 14, the women left the dance and started to walk home. They were accosted by two men, Richard Nunez and appellant, Roman Adrian.

Nunez grabbed Virginia and twisted her arm behind her back, while appellant

seized Mary Gutierrez by the hair and pointed a gun at her head. The sisters were forced to accompany their assailants to Grant Park, several blocks away. There, Nunez took Virginia into the ladies' restroom and forced an act of sexual intercourse with her. While this was occurring, appellant held Mary and Esperanza at gunpoint on a porch outside.

After Nunez came out of the ladies' restroom with Virginia and talked with appellant, appellant compelled Mary and Esperanza to go inside with Virginia. Nunez then raped Virginia a second time, while appellant raped Mary. Esperanza was ordered to sit quietly in the dark. Nunez, who at this point had the gun, placed it on the floor to complete the assault on Virginia. She was able to obtain the gun and gave it to Esperanza. When Nunez lunged toward Esperanza, she shot him in the head, killing him instantly. Appellant then left, but was subsequently arrested.

■ Appellant argues that there was no evidence presented from which a jury could have found that he aided, abetted, advised or encouraged the rape of Virginia by Nunez and, therefore, the court erred in denying his motion for a directed verdict as to this count of rape. We do not agree.

A.R.S. § 13–139 states:

"All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, * * * are principals in any crime so committed."

While there is no evidence that appellant announced his intention to aid Nunez in his rape of Virginia, there was substantial circumstantial evidence from which the jury could conclude that appellant aided Nunez. Mary Gutierrez testified as to what happened when the three women were stopped by Nunez and appellant. She referred to Nunez as "Richard" and appellant Adrian as "Andrew."

"Q. Tell us what happened with Richard right at first. What did Richard do?

A. Well, he grabbed my sister and—

Q. Which sister?

A. Soto, Virginia.

Q. Okay.

A. And he put his arms so, kind of a way around her body and she was going to fight him but after Andrew told him—told her to behave, if not, he was going to shoot me and he put the gun on my head."

And later she testified as to what occurred while Richard raped Virginia in the restroom:

"Q. What was happening with you and Esperanza and this man?

A. Nothing. We were just getting threats by him, like making us run or if I run she will get it. He will put the gun on her head.

Q. On whose head?

A. Esperanza.

Q. He said if you run she will get it?

A. Yes."

While appellant held the sisters at gunpoint, a security car drove by the park. Mary testified:

"Q. Now, as this security car drove by, did something happen then, Mary?

A. Yes.

Q. What was that?

A. He said that if I yelled or if we yelled or do anything to get his attention, that we were going to get it, he was going to shoot us."

■ We have held that a verdict should not be directed where there is substantial evidence that a defendant committed the crime charged. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), cert. denied 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970); State v. Williams, 104 Ariz. 319, 452 P.2d 112 (1969). A motion for a directed verdict does not question the

competency of the evidence, only its sufficiency. State v. Acosta, 101 Ariz. 127, 416 P.2d 560 (1966); State v. Holliday, 92 Ariz. 168, 375 P.2d 370 (1962). We think the evidence demonstrates the wholehearted cooperation of appellant in the rape of Virginia Soto by Nunez.

For his next issue on appeal, appellant urges that he was denied a unanimous jury verdict on Count II of the information which charged the aiding and abetting in Nunez's rape of Virginia for the reason that the prosecution failed to specify which rape of the two rapes of Virginia it was relying upon. This is but an extension of the argument that there was not sufficient evidence to find that appellant aided and abetted Nunez.

█ It is appellant's position that the second rape of Virginia by Nunez occurred after appellant and the younger sisters went into the ladies' restroom, and that some of the jury could have based their verdict on aiding and abetting in the first rape, while others could have relied on the second rape. If so, it is urged, appellant was denied a unanimous verdict as is required for conviction in a criminal case by Art. 2, § 23, Arizona Constitution, A.R.S.

Appellant relies on Hash v. State, 48 Ariz. 43, 50, 59 P.2d 305, 308 (1936), wherein we said:

"The law is well settled that, where the evidence shows or tends to show, that several acts of intercourse have occurred between defendant and prosecuting witness, it is incumbent upon the prosecution to elect which one of such acts it relies upon for conviction."

While some parts of the testimony of Virginia Soto are difficult to understand because of her unfamiliarity with the English language, the record is clear that one rape of Virginia by Nunez occurred while they were alone in the restroom. Her testimony tends to suggest a second act of intercourse after appellant and her two sisters went inside.

Hash v. State, *supra,* is not authority for appellant's position under the facts of this case. In Hash, the defendant was on trial for the actual offense of rape, while here, appellant, who did not actually commit the offense against Virginia, was tried as a principal for aiding or abetting Nunez in the rape. The jurors were properly instructed that the acts of appellant in participating and encouraging the common design of committing rapes made him responsible as a principal under A.R.S. § 13–139. Hence, whether Nunez accomplished a second act of intercourse is immaterial, because the evidence is clear that from the beginning appellant assisted and participated with Nunez in the felonious assaults.

█ When a person aids, assists, procures or counsels another in the commission of a crime, all are principals and equally guilty. State v. Carter, 66 Ariz. 12, 182 P.2d 90 (1947). Under Arizona statute, A.R.S. § 13–139, aiding and abetting is an independent and distinct substantive offense and whether a principal is convicted of the actual crime has no bearing on the trial for aiding and abetting. State v. Spillman, 105 Ariz. 523, 468 P.2d 376 (1970).

We hold that appellant was not denied a unanimous jury verdict on the charge of raping Virginia Soto, since the evidence is clear that he aided and abetted all of Nunez' criminal acts.

Mary Gutierrez testified on cross-examination:

"Q. And throughout the evening or throughout the period of time that elapsed, whether it was a half hour or an hour, would it be fair to say that Richard was sort of calling the shots? Was Richard sort of running the show?

A. They both were.

\* \* \* \* \* \*

Q. They both were. It didn't appear to you one was calling or running things more than the other?

A. No, because the two of them were—had everything, like, planned it. I don't know. Everything went—what they said, like Richard told Andrew to hold me back, he hold me back, and he got—"

Finally, appellant claims that there was not sufficient evidence to convict him of kidnapping with intent to commit rape, and the convictions for rape and kidnapping with intent to commit rape subjected him to double punishment for one act.

A.R.S. § 13–1641, in part, reads:

"An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one."

 Appellant asserts that the jury inferred from the fact of his rape of Mary Gutierrez that he possessed the necessary specific intent for the offense of kidnapping with intent to commit rape, and that therefore the elements used to prove both crimes are identical. We find appellant's argument to be without merit.

It is obvious that if the crime of kidnapping with intent to rape occurred it was consummated before the rape of Mary Gutierrez. As to this, appellant actively participated in forcing the sisters to go to Grant Park and into the ladies' restroom. The actus reus involved for the kidnapping was clearly established by his conduct. Here, again, the jury did not have testimony in which the appellant announced his specific intentions; rather, it had to ascertain the criminal intent from circumstantial evidence. State v. Harvill, 106 Ariz. 386, 476 P.2d 841 (1970).

 It should be emphasized that the offense of kidnapping with intent to commit rape can be established without proof of a subsequent rape where the circumstances indicate an intention to rape. In the case before us, there is ample testimony independent of the subsequent rape to support the jury's verdict.

Virginia Soto testified that after being raped by Nunez, she was forced to leave the restroom and accompany him to meet appellant and her sisters. Referring to appellant, she testified:

"INTERPRETER: He told them to go inside.

(Witness speaks in Spanish to interpreter.)

INTERPRETER: If they didn't go inside—

(Witness speaks in Spanish to interpreter.)

INTERPRETER: And he said that if they didn't think he could shoot with that gun and he shot at the floor, at the ground.

Q. He shot at the ground, then?

A. Yes.

Q. This was outside in front of the restroom?

A. Yes.

Q. And he had the gun in his hand?

A. Yes.

Q. And that is this man in the courtroom?

A. Yes.

Q. After this man, Adrian, shot in the ground outside the women's restroom, what happened right after that, Virginia?

A. He told Richard to tell me to tell my sisters to go in with me, in the bathroom, and him."

Mary Gutierrez also testified that the appellant's firing of the gun forced her and her younger sister to obey his orders. We think the jury could infer from these facts that appellant and Nunez intended criminal assaults from the start, and that this state of mind existed from the time the sisters were first approached.

We hold that the convictions for kidnapping with intent to commit rape are supported by the evidence, and that appellant was not subjected to double punishment in violation of A.R.S. § 13–1641 by these convictions.

The judgments are affirmed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.