## James McGuire v. The People.

*Robbery—Testimony of children—Reasonable doubt.*

A child between six and seven years old may be properly examined as a witness to sustain a prosecution for robbery, if the trial judge fully satisfies himself that the child is conscious of the duty of speaking the truth, and if the jury is properly cautioned concerning his statements.

A young child testifying as to the identity of a person accused of robbing the child's father was asked on cross-examination if his father had not told him the prisoner was the man, and answered in the affirmative. *Held*, that it was not improper in examining the child's father to allow him to deny this. It was not an attempt to impeach the child's testimony, as it did not refer to contradictory statements out of court, and it was competent to show facts making it unlikely that he had made his conclusion of identity from improper *data*; and the credibility of the witness was for the jury.

The effect of excluding testimony bears on the question whether it is admissible.

Where a witness, not familiar with the full bearing of questions put to him, gives answers that seem ambiguous, or raise suspicions of collusion, it is not improper to show what the facts are.

In a prosecution for robbery the recognition of the assailant is a circumstance bearing on the merits, and is not a mere collateral matter.

On a trial for robbery a fellow-prisoner of the accused testified to an account of it given by the latter, and named other prisoners who were present. One of these was asked as to conversations with the accused in the presence of the witness, but the questions were ruled out as not referring to the particular conversation. He was at length allowed to answer that he heard a statement by the accused in the witness' presence, and counsel for the respondent dropped the inquiry at that point, although no adverse ruling had been made. *Held*, that as no one understood there was any objection to testimony which would contradict the witness or, explain what he referred to, there was no error in the previous rulings, which were not meant to exclude proper questions.

A reasonable doubt is not far-fetched, speculative or arbitrary, but is such that after looking over the testimony and considering all the facts proven to their satisfaction and the natural circumstances surrounding the facts, the jury are still unable to say that the accused is guilty.

Error to Superior Court of Grand Rapids. Submitted June 22. Decided October 6.

INFORMATION for robbery. Conviction affirmed.

*McBride & Carroll* and *E. S. Eggleston* for plaintiff in error.

Attorney-General *Otto Kirchner* for the people.

CAMPBELL, J. McGuire was convicted before the Superior Court of Grand Rapids of robbery, while armed with a dangerous weapon, committed on one Albertus Meyer. Meyer testified positively to the robbery on the night of November 17, 1879, while he was walking home with his little boy. He was approached from behind, gagged and thrown down, and his money stolen. He could not recognize the two men who robbed him before they ran out of sight, but the boy recognized McGuire and identified him. The most important evidence, therefore, was that of the child, who was a few months over six years old.

An exception was taken to the examination of this boy, on account of his extreme youth, and the judge who tried the cause had some hesitation about it. He, however, took the lad into his own room and had a long conference with him, in addition to what appeared in court, and he finally came to the conclusion that the child was sufficiently conscious of the duty of speaking the truth that he might be received as a witness, subject to such cautions to the jury as were proper concerning his statements.

We held in *Washburn v. People* 10 Mich. 372, that the reception of such testimony was permissible where the judge was satisfied. We think that in the present case the course taken was such as to justify the judge in doing as he did. The boy was the only witness who could recognize the prisoner, and it was therefore important to receive him if there was any sound reason to believe he could give reliable information. There is of course some danger that a child of tender years may be influenced to tell what is not true. But the

inability of such an inexperienced boy to keep up a consistent
false story through the various questionings of a trial is a
pretty safe guard against any great danger on that head. He
is far more likely to answer wrongly from not fully under-
standing questions put to him, than from deliberate false-
hood. His method of telling his story here was simple and
childlike, and, so far as we can tell from a paper description
of it, was candid and honest. At any rate the jury must
have thought so, and we are not surprised that they did. The
judge cautioned the jury fully and clearly on the necessity
of sifting his testimony very thoroughly. He could not well
have been more explicit. We cannot think the danger of
receiving such a witness is any greater than that of rejecting
him.

On the cross-examination, in answer to some questions con-
cerning his recognition of the respondent at the police station,
he was asked whether his father had not told him respondent
was the man, and he answered in the affirmative to this and
one or two similar questions about the recognition. And
while the questions were not quite broad enough to exclude
any other knowledge, they had with the answers a bearing
on the fact of his knowledge. When the father was exam-
ined as a witness he was asked if he had ever told the boy
respondent was the man who assaulted him, and allowed to
answer, and replied in the negative. This is also assigned as
error.

We do not think this was improper. It was in no sense
an attempt to impeach the lad, for it did not refer to any con-
tradictory statements out of court. It seems to us competent
evidence to show facts making it unlikely that the boy had
made a conclusion of identity from any but proper *data*.
The whole facts were before the jury. If they thought he
had intentionally stated what was not true as to his source of
knowledge, or if they thought the father had prompted him
and then denied his own action, they had seen both when
testifying and could judge accordingly. They evidently con-
cluded that the cross-examination did not bring to the child's
attention the point whether his recognition was spontaneous

or only the result of prompting from his father. Perhaps one of the best means of judging whether testimony is proper is to consider what would happen from its exclusion; and we think that where a child or a person not familiar with the full bearing of such questions as are put to him makes answers that appear ambiguous, or that raise suspicions of collusion, it is not improper to show what the facts are. It must be borne in mind that the recognition of the assailant is in itself a circumstance bearing on the merits, and not a mere collateral matter.

A witness Britton, who was confined in jail at the same time with McGuire, testified to an account given by the latter of the robbery, and on cross-examination gave the names of several persons who were in prison at the time, and among others a man with red whiskers, who is claimed to have been one James Carson. Several questions put to Carson concerning conversations with McGuire in Britton's presence were rejected as not referring to this particular conversation. We have some doubt whether some of these rulings may not have gone too far. But finally he was allowed to answer that he heard a statement made by McGuire in Britton's presence, and respondent's counsel, without any ruling against it, dropped the inquiry without pursuing it further. We are satisfied that no one understood there was any objection to testimony which would contradict Britton, or explain what he referred to, and that respondents' counsel, when the door was fairly opened to the inquiry, chose to leave it as it was. There was therefore no error by reason of the previous rulings, which we think were not meant to shut out proper questions. We see no pertinence in the inquiry concerning the previous reading of newspapers referring to the robbery.

We think the court charged as fully and carefully on the weight to be given to the child's testimony and the caution to be used in acting upon it as was necessary, and that nothing important was omitted that did not come within the general instructions. What was said about the prisoner's statement left its whole effect to the jury. We are not informed what it was, and cannot assume it required different treatment. We

44 MICH.—19

are unable to say that the jury would have been made any wiser by any other instruction concerning reasonable doubt.* If they understood English they could get little aid from any closer definition.

We discover no error, and the court below should be advised to proceed to sentence on the verdict.

The other Justices concurred.

---

*The court charged with regard to "reasonable doubt" as follows: "The expression itself seems to comprehend the whole subject matter. *Reasonable* doubt, of course—that is, not a far fetched one; it is not a speculative one; it is not an arbitrary one; but it is just what it assumes to be, a reasonable doubt. If you, after looking over the testimony, and considering all the facts proven to your satisfaction in the case, and the natural circumstances that surround those facts—if you are still unable to say that the prisoner is guilty, it is your duty to acquit. And that, we apprehend, is what is understood by a reasonable doubt in the law."