388 P.2d 806

**STATE of Arizona, Appellee,**

**v.**

**James Dell JONES, Appellant.**

**No. 1355.**

Supreme Court of Arizona.

En Banc.

Jan. 29, 1964.

Robert W. Pickrell, Atty. Gen., Phoenix, Norman E. Green, County Atty., Pima County, Carl Waag, Deputy County Atty., Tucson, for appellee.

William Messing, Tucson, for appellant.

LOCKWOOD, Vice Chief Justice:

Defendant Jones was charged with (1) contributing to the delinquency of a minor, and (2) rape, second degree. On stipulation, he was tried before the court sitting without a jury. At the end of the trial, on motion of the deputy county attorney, the first count was dismissed. The court found defendant guilty of the second count of rape, second degree, from which judgment Jones appeals.

Counsel for defendant makes several assignments of error, the most serious of which is that the court permitted the introduction of a written statement and oral admissions by the defendant without first having sufficiently established the corpus delicti. If there were not sufficient evidence independent of and as a foundation for such statement and admissions, to establish that the crime of which defendant might be convicted was committed, and a criminal responsibility therefor, then of course defendant's claim would be correct. State v. Weis, 92 Ariz. 254, 375 P.2d 735 (1962); State v. Hernandez, 83 Ariz. 279, 320 P.2d 467 (1958). The following evidence, however, does sufficiently establish the corpus delicti.

The evidence taken in the strongest light in favor of the state, was substantially as follows: Defendant, a young adult male, was a member of the Air Force, stationed at a base near Tucson, Arizona. On New Year's day, 1963, he and a companion from the base went to Tucson to visit with a

young woman, the victim's sister, at the home where the victim lived. They remained there most of the day, and into the evening and night hours. During that time there were present the two young men, the sister and another young woman, another sister, aged twelve, a brother, aged eleven, and the victim, aged nine. The two young men and women spent the time "drinking beer and whiskey, watching TV and listening to records."

When it became dark, defendant and the victim left the house to go to a market to get some beer. Her testimony as to what happened when they reached an alley was as follows:

"A. When we got into the alley he throwed me on the ground.

"Q. And then what happened?

"A. He took off my panties and put them in his pocket.

"Q. And then what happened?

"A. Then he got on top of me.

"Q. And then what happened?

"A. He started going up and down.

"Q. And tell us what happened.

"A. He put his private part into my private part."

\* \* \*

"Q. \* \* \*, would you show me where James put whatever he put next to you? Did it hurt you?

"A. Yes."

She further testified that the defendant returned to her the panties, which she put on, and she and the defendant then went to the store, where he bought some beer, and a candy apple which he gave to her. They then returned to her house. Immediately after they returned to the house, she showed her panties, which were bloody, to her brother and twelve year old sister. She testified she did not explain how the blood got there, although her sister testified that the victim said "she was in her period".

A doctor testified he had examined the victim on January 20th. He said that he found her hymen ruptured and that it had been done more than a few days before the examination. He further stated that it was very rare that a menstrual period should occur in a girl as young as ten years old and that it was very rare that such a period should occur in a girl as young as ten and then not occur again for a long period of time.

The adult sister testified that on the morning after the night in question, she saw the slip which the victim had worn, and that it had fresh blood, which had dried, on the back. She said that her nine year old sister had never had a menstrual period before, nor had she had such a period after that time.

The court did not err in ruling that upon the foregoing evidence, the corpus delicti was established, and that admis-

sions against interest made by defendant were thereupon admissible in evidence.

■ Defendant refers to the statements made by defendant as a "confession". In his written statement defendant admitted going to the store with the victim, and before that stopping and being "on top of her," but blamed her for inducing his actions. In the oral statements made in the presence of two police officers who questioned him on the day of his arrest, and to which they testified, he admitted "getting into her" about a half inch. The trial court heard testimony as to the voluntariness of the statements which was somewhat conflicting, and determined the statements were voluntarily made. This did not constitute error.

■ Defense counsel attacked the competency of the victim and certain witnesses to testify. He claimed that the victim and her twelve year old sister were "retarded". The judge heard independent testimony regarding their mental ability to understand facts and to tell the truth, and also examined each of them regarding their understanding of the meaning of an oath. The evidence before the judge was ample to justify him in determining the little girls were competent to testify.

■ The other witness whose competency defendant challenged was the doctor who examined the victim. This doctor had not been licensed to practice in Arizona. However, he testified he had a medical degree from the University of Guadalajara School of Medicine in 1956, and had a year of internship in the Pima County Hospital and St. Mary's Hospital in Tucson. He then took a year of residency in Los Angeles in internal medicine. He further studied a third year of internal medicine in Boston, and practiced for a year and a half, before returning to Tucson. At the time of the trial he had completed most of his requirements for a license to practice medicine in Arizona. The trial court did not abuse his discretion in determining that all of these witnesses were competent to testify.

At the outset of the trial defense counsel had requested findings of fact and conclusions of law, and the trial court indicated it would make them, reaffirming this at the end of the trial. For some reason not disclosed by the record, it did not do so. Defendant claims this as error.

■■ There is no criminal rule of procedure for requiring findings of fact and conclusions of law. However, defendant claims that Rule 272, Rules of Criminal Procedure, 17 A.R.S., provides that the laws of evidence and instructions to the jury in civil actions shall apply to criminal actions except as otherwise provided, and that therefore Rule 52, Rules of Civil Procedure, 16 A.R.S., requiring the trial court to make such findings and conclusions when re-

**234**

quested, applies. Rule 272 has no application, since findings of fact and conclusions of law are merely matters of procedure.

■ Defendant urges that the elements of the crime of rape, second degree, were not proved. His argument is that the statute provides that second degree rape is committed when (a) there is an act of intercourse with a female not the wife of the perpetrator, (b) when the female is under the age of eighteen, and (c) under circumstances not amounting to rape in the first degree. He points out in first degree rape one of the elements is that the act is committed against the will of the female. Ergo, he says, if the elements of first degree rape are shown, a defendant cannot possibly be convicted of second degree, which precludes "circumstances amounting to first degree .rape."

■ While ingenious, we cannot agree with defendant's reasoning. Although the language of the statute is somewhat inept, it is obvious that the legislative intent was that not all the elements of first degree rape need be present in that described as of the second degree. If the elements necessary i. e., (a) and (b) above, are present. There is no merit to this claim of defendant.

Judgment affirmed.

UDALL, C. J., and STRUCKMEYER, BERNSTEIN and JENNINGS, JJ., concur.