481 P.2d 504

STATE of Arizona, Appellee,

v.

Clark Don HARRIS, Appellant.

No. 2146.

Supreme Court of Arizona,
In Division.

March 4, 1971.

42

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Philip M. Haggerty, Phoenix, for appellant.

LOCKWOOD, Justice:

Appellant, hereinafter referred to as defendant, was convicted below of one count of child molestation (A.R.S. § 13–653) and sentenced to a term of two to five years in the Arizona State Prison. He appeals claiming he was denied the right to confront the witness against him, that the state failed to prove an essential element of the crime, that the trial court abused its discretion in allowing the complaining witness to testify, and that the trial court erred in refusing to give his requested jury instruction, and in refusing to grant a mistrial.

Taking the facts in the light most favorable to sustaining the verdict, as we must on appeal. State v. Dutton, 106 Ariz. 463, 478 P.2d 87 (1970) they are as follows:

Both the defendant and the complaining witness (hereafter called "the victim" or "the boy") were mentally retarded and attended special education classes in their respective schools. The defendant was nineteen years old, and the victim was a boy ten years old.

On October 4, 1969, the defendant and the victim were attending a movie at the Fox Theatre in downtown Phoenix. The two did not arrive together. The defendant arrived at about 3:00 in the afternoon. The victim did not give the time of his arrival.

The victim was sitting in the front row of the movies. The defendant sat down beside him. The two said "hi" to each other. At about 4:00 p. m. the victim left the seating portion of the theatre to wash his hands. The defendant followed him. By the candy counter the defendant asked him if he wanted some candy, and gave him a package of Tootsie Rolls. The victim thanked the defendant, and then went up the stairway to the mezzanine to the men's restroom. The defendant waited until the boy reached the top of the stairs, then followed him. The boy in the meantime had entered the men's restroom, and washed his hands. He then entered the toilet stall on the end, which had no lock on the door. The victim's testimony was somewhat confusing regarding whether there was anyone else in the restroom at that time. The defendant then followed him into the stall. The victim told the defendant that only one at a time could occupy a stall, and the defendant replied that two could. The defendant then exposed himself and forced the victim's head down to touch the defendant's private parts, and forced the victim to fondle them. The defendant assured the complaining witness that there was nothing to be afraid of. The victim stated that somebody came into the restroom at this point, and the boy ran from the room, and reported the incident to the theatre manager who called the police.

Arturo Velasquez testified at trial that he overheard such an incident take place. At about 4:00 o'clock in the afternoon of October 4, 1969, Velasquez had occasion to be in the men's restroom of the Fox Theatre. Velasquez was a city employee who had been posted at the Fox Theatre because of a suspected "rumble" in the Phoenix Union High School area. While he

was in the restroom he heard what he described as an adult voice and a child's voice coming from the stall on the end. The center stall was also occupied. The trial court did not permit Velasquez to repeat the substance of the conversation, as he could not identify the defendant's voice. Velasquez observed that the child was wearing sneakers, and that the adult was wearing dark, possibly black, dress shoes. He could only observe the feet and legs of the two occupants of the booth.

Velasquez left the restroom to report the incident to an usher. Velasquez had difficulty in attracting an usher's attention. He started to go to the manager's office, when he observed a young boy, whom he identified as the victim, run from the restroom and down the stairs. He later saw this boy in the manager's office and identified his voice as the one he heard coming from the stall. Velasquez testified that the adult voice which he heard was clear and normal in every respect.

Velasquez started to check the men's restroom to see if the adult was still there. As he was going back up the stairs, he caught a glimpse of a Negro male wearing a Phoenix Union letter sweater. He did not see the man's face. He later identified the defendant by his clothing and general build.

The victim testified that the man involved in the incident was a Negro male wearing black pants and a letter sweater. Officer Offutt testified that the defendant when apprehended was wearing black pants and a Phoenix Union letter sweater.

The victim was a difficult witness. His testimony was often confused and contradicted some details of testimony which he gave at the preliminary hearing. However, his testimony as to the facts of the incident, and the identity of defendant was clear and unambiguous.

The defendant took the stand and testified in his own behalf. He denied that he took any part in the incident in question.

The defendant's father, mother and sister all testified as to the defendant's mental retardation and lack of ability to speak clearly, contrary to Velasquez' testimony that the voice of the adult which he heard was a "normal" voice. However, the jury resolved the facts against the defendant.

The defendant complains that he was denied the right to confront the witness against him when the trial judge questioned the victim in chambers, when neither counsel nor defendant was present. On the morning of the trial, the victim could not be produced. The Deputy County Attorney had interviewed him the day before, and the boy ran away from his foster home that night. The trial court granted the state until 1:30 p.m. to produce the victim. The state did produce him and prior to trial, the trial judge had a conversation with him in chambers at which a court reporter was present and recorded the entire conversation between the judge and the victim. From an examination of the record, it is obvious that the judge was trying to put the boy at ease. At first he did not respond but after some general conversation and questions from the judge, he began to talk more freely.

Defense counsel claims that the trial court suggested to the "child witness" (victim) outside the presence of the defendant or his counsel that the child witness would be able to recognize or identify *the defendant* when the witness entered the courtroom where the defendant was present. We find no merit in this. The basis for such proposition is found in the reporter's transcript of the in chambers conversation as follows:

"Q. BY THE COURT: I'm back again. They are getting everybody out and what I thought we would do is take a little tour. You know, there aren't many little boys that are 10 years old that get to take a tour of the Courtroom all by themselves. So, what I thought we would do is we would put the lawyers where they are going to sit and I will intro-

**44**

duce you to the lawyers. I think you know them already, I'm not sure, but I think you will recognize them and then we are going to have another man that I think you recognize sit right where he is going to sit, but there won't be anybody else in the Courtroom.

"A. BY THE WITNESS: Nobody else, just that man and you and me and her?

"Q. The two lawyers—there are two lawyers and Clark and you and Mrs. Brittan and me, okay? And, we will go together, all right, then I will show you were the jurors are going to sit. Do you know what jurors are?"

The victim identified the defendant without hesitation in the courtroom, and also defense counsel, whom he had seen previously at "the other courtroom" (at the preliminary hearing). In view of all the circumstances we can find no prejudicial error in the court's statement in chambers.

■ It has long been the rule that a defendant has the right to be present at a determination of a witness' competency. 58 Am.Jur. Witnesses § 134 and 23 C.J.S. Criminal Law § 974. In McGuire v. People, 44 Mich. 286, 6 N.W. 669, the same question was raised when a trial judge in a robbery case held a long conference with a six year old child witness in the judge's "own room" in addition to an examination in the courtroom. The appeal court in affirming the conviction of the defendant did not find the private conference error on the part of the trial court.

■ It is conceivable, as the defendant asserts, that the trial court's later determination of competency in open court might have been somewhat influenced by this private interview. However, in the present case the trial judge, after the interview in chambers, did examine the boy in open court (but out of presence of the jury) and permitted both attorneys to do so regarding his competency. We do not agree with defendant's claim that he was denied right of confrontation under these circumstances.

■ The defendant next complains that the trial court erred in permitting the victim to testify at all. He alleges that the victim was under a double disability due to his age and lack of mental capacity. A.R.S. § 12–2202 and A.R.S. § 13–1801, Rule 43(c) Arizona Rules of Civil Procedure, 16 A.R.S. Rule 272, Arizona Rules of Criminal Procedure, 17 A.R.S.

Where the trial court has conducted an examination to determine a child witness' competency out of the presence of the jury, as was done here, we will not reverse unless there is a clear abuse of discretion. The victim was questioned whether he knew the difference between truth and falsehood, whether he would tell the truth, and whether he knew that failure to do so produced the consequences of punishment. He was also asked questions testing his ability "to receive just impressions of the facts relating to which he was examined." State v. Berry, 101 Ariz. 310, 419 P.2d 337 (1966); State v. Jones, 95 Ariz. 230, 388 P.2d 806 (1964); State v. Guildin, 63 Ariz. 411, 162 P.2d 907 (1945); Sheek v. State, 19 Ariz. 509, 172 P. 662 (1918). We find no abuse of discretion on the part of the trial judge in permitting the victim to testify.

■ Defendant's next contention is that the state failed to prove an essential element of the crime. A.R.S. § 13–653 provides:

"A person who molests a child under the age of fifteen years by fondling, playing with, or touching the private parts of such child or who causes a child under the age of fifteen years to fondle, play with, or touch the private parts of such person shall be guilty of a felony, * * *."

An essential element of the crime is the age of the child. If the state has failed to prove the age of the child, then the defendant cannot be found guilty of the offense. The victim testified that he was ten years old.

Testimony of a person's own age has long been an exception to the hearsay rule.

Children have frequently been allowed to testify as to their own age. Dutzler v. State, 41 Ariz. 436, 19 P.2d 326 (1933). In that case a boy was allowed to testify as to his age of 13, even though his father testified that the boy was born on a date that would make the child 14. We fail to see that the trial court abused its discretion in its ruling that the victim's age had been sufficiently established.

■ During the trial, while cross-examining the defendant's father the deputy county attorney asked the witness "Has he ever been in any of this kind of trouble before." The defendant's counsel immediately objected, and the witness was not allowed to answer the question. The defendant moved for a mistrial.

The deputy county attorney did not offer to prove that defendant was engaged in any prior sexual offenses. The question was improper but since the objection was immediately sustained, and no further reference was made to the subject we believe the question as asked was not sufficient to prejudice defendant by speculating on what the father might have answered. Denial of the motion for mistrial was not error.

■ Defendant's next complaint is the trial court's failure to give the cautionary instruction as requested by him.

The defendant requested the following instruction:

"It is not essential to a conviction in this case that the testimony of the child who is a prosecuting witness, be corroborated by other evidence, provided that from all the evidence you are convinced, beyond a reasonable doubt, and *to a moral certainty* of the defendant's guilt. However a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and, once made, difficult to disprove. From the nature of the case such as this, the child and the person accused are usually the only witnesses. Therefore, I charge you that the law requires that you examine the testimony of the child who is the prosecuting witness with caution.

"In giving this instruction, I do not mean to imply an opinion of my own as to the credibility of any witness.

"The fact that the charge here made is one difficult to disprove, should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty as charged." (Emphasis added.)

The instruction as requested by the defendant contains an error or misstatement of the law in that it refers to "moral certainty." While "moral certainty" has frequently been equated with reasonable doubt, this Court has held that it is not, but is of a higher degree, and confusing to a jury. State v. Carter, 66 Ariz. 12, 182 P.2d 90 (1947). If a defendant's requested instruction contains an error or misstatement of law, it is not the duty of the trial court to correct that statement. State v. Denton, 101 Ariz. 455, 420 P.2d 930 (1966); State v. Boozer, 80 Ariz. 8, 291 P.2d 786 (1955); Strickland v. State, 37 Ariz. 368, 294 P. 617 (1930); Rain v. State, 15 Ariz. 125, 137 P. 550 (1913).

The jury was properly instructed on the presumption of innocence and the burden of the state to prove the defendant's guilt beyond a reasonable doubt. The trial court instructed the jury using the traditional definition of reasonable doubt. There was no error in the refusal to give the requested instruction.

Judgment affirmed.

UDALL and CAMERON, JJ., concur.