David AVERY and James Lee Avery,
Appellants,

v.

STATE of Alaska, Appellee.

No. 1603.

Supreme Court of Alaska.

Sept. 28, 1973.

Herbert D. Soll, Public Defender, R. Collin Middleton, Deputy Public Defender, Lawrence J. Kulik, Alexander O. Bryner, Asst. Public Defenders, Anchorage, for appellants.

John E. Havelock, Atty. Gen., Daniel W. Hickey, Asst. Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Chief Justice.

Appellants David Avery and James Lee Avery were jointly tried by jury on an indictment charging robbbery [1] and two separate counts of shooting with intent to kill, wound or maim.[2] The indictment arose out of a robbery of the Sabre Jet Liquor Store in Anchorage which occurred on January 21, 1971. The jury returned verdicts of guilty on the robbery count but were unable to arrive at verdicts regarding the shooting with intent to kill counts. Appellants were sentenced to fifteen years imprisonment. This joint appeal followed from the judgments of conviction and commitments.

1. AS 11.15.240 provides:
    A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

2. AS 11.15.150 provides:
    A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.

Appellants advance several assertions of error on this appeal. They contend (1) that certain evidence admitted against them was the fruit of a warrantless search and seizure violative of article I, § 14 of the Alaska Constitution and the fourth and fourteenth amendments to the United States Constitution; (2) that the trial court erred by not providing a fair opportunity to challenge the jury panel on the ground that the jury selection procedures employed violated the equal protection clauses of the Alaska and United States Constitutions; (3) that the trial court improperly instructed the jury on the meaning of reasonable doubt; (4) that the trial court erred by failing to give the mandatory cautionary instruction regarding oral admissions of a party; (5) that the trial court erred in admitting hearsay evidence; and (6) that the 15-year sentences are excessive.

I

Prior to trial appellants filed a motion to suppress a .22 caliber pistol, a woolen ski mask, and two parkas, all of which were seized without a warrant at the time they were arrested. After hearing the superior court denied the motion. For reasons hereafter expressed, we find no error in the superior court's ruling denying the motion to suppress. A series of leads on the night of the robbery led officers Weaver and Carlson of the Anchorage Police Department to the house of one Al Norris. There, Weaver and Carlson placed David and James Avery under arrest for the robbery of the Sabre Jet Liquor Store. The Averys conceded at oral argument the validity of the arrest but contend that the seizure of above mentioned items incident to their arrest was improper.

In the early hours of January 22, 1971, following the robbery the police officers found James Avery lying in bed in a doorless room about eight feet long and six feet wide. Officer Weaver arrested James at his bed and ordered him to get up and dress himself. As James sat up in bed, a dark woolen object appeared from beneath his pillow. Officer Weaver reached under the pillow, retrieved the woolen object, and discovered that it was a ski mask containing a .22 caliber pistol. While Officer Carlson held James, Weaver stepped behind a curtain in a doorway leading from Avery's room. Weaver turned on the lights and caught sight of David Avery lying beneath a fur-ruffed parka. Weaver placed David under arrest and seized his parka. We hold that Officer Weaver discovered these items in the course of a properly limited search incident to James Avery's warrantless arrest, and that they were therefore subject to seizure.

■■ It is established that once a person is lawfully arrested,[3] the arresting officers have the right, without a search warrant, to search "the arrestee's person and the area 'within his immediate control'. . . ." for weapons and destructible evidence[4] of the crime. The area of the

---

3. The Averys concede that James Avery's arrest was lawful.

4. Chimel v. United States, 395 U.S. 752, 763, 89 S.Ct. 2034, 2042, 23 L.Ed. 685, 694 (1969); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); accord, Erickson v. State, 507 P.2d 508 (Alaska 1973); Mestas v. Superior Court of Santa Clara County, 7 Cal.3d 537, 102 Cal. Rptr. 729, 498 P.2d 977 (Cal.1972). Mr. Justice Stewart, speaking for the majority in *Chimel*, said:

When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's per-

pillow was well within the range of Avery's immediate control at the time of his arrest. We think that under the circumstances Officer Weaver was justified in searching beneath the pillow in order to protect himself and prevent the destruction of evidence.

█ Similarly, we conclude that it was proper for Officer Weaver to inspect the area behind the curtain. James Avery's arrest took place in a room eight feet long and six feet wide. It was reasonable for the officer to search behind the curtain, since in this tiny room Avery might easily have reached behind the curtain for a weapon.[5] We think that the officer's search incident to Avery's arrest was properly limited under *Chimel*. Therefore, the resulting discovery and seizure of the fur-ruffed parka covering David Avery, who was lying in the room behind the curtain was not the product of an unconstitutionally extended search incident to an arrest.

█ Finally, we briefly note appellants' contention that the police improperly seized a second parka, which, at the time of James Avery's arrest, lay on the floor, partly concealed by the curtain leading to the other room. However, as the Supreme Court in Harris v. United States [6] observed,

It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.[7]

Since the appellants concede the lawfulness of James Avery's arrest, we conclude that this parka was lawfully subject to seizure by the arresting officers.

## II

Immediately prior to trial, the appellants filed a "Motion to Quash the Entire Master Panel and Jury Venire," contending that the panel from which the jurors were selected "systematically excluded or substantially underrepresented non-white persons and persons of lower economic status." Being both poor and black, the appellants claimed that this "substantial underrepresentation" denied them equal protection of the laws under the Alaska Constitution [8] and United States Constitution.[9]

The Averys based their motion on the findings of a 1966 study of the racial and economic composition of one Anchorage jury panel. The court heard the author, Mr. Alan McGrath, summarize his conclusions from that study. McGrath's principal contention was that the one jury panel he canvassed substantially underrepresented the poorer sectors of the Anchorage community.[10] McGrath's findings were based on a jury panel drawn under pre-

son and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
395 U.S. at 762–763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

5. As the court in *Chimel* noted:
A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. 397 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

6. 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

7. *Id.* at 236, 88 S.Ct. at 993, 19 L.Ed.2d at 1069 (citations omitted) ; *accord*, Robinson v. State, 489 P.2d 1271 (Alaska 1971) ; Pope v. State, 478 P.2d 801 (Alaska 1970) ; Klockenbrink v. State, 472 P.2d 958 (Alaska 1970).

8. Alaska Const. art. I, § 1, states:
. . . all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State.

9. U.S.Const. Amend. XIV, § 1, states in part:
. . . nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

10. McGrath stated that of the 49 persons on the jury that he examined, 12 percent earned

1969 jury selection procedures which randomly selected jurors from voter registration lists only. The Averys' jury was selected under amended AS 09.20.050 which provides that jury lists will be compiled from names of persons who purchased fish and game licenses; who filed personal income tax returns; and who are registered to vote.[11]

The appellants next presented a sociologist to testify on the jury selection procedures. He stated that in his opinion the McGrath study indicated the existence of bias in the selection procedure which tended to exclude members of minority groups from the jury panel. He further testified that even though AS 09.20.050 had been amended to create an enlarged population base from which jurors were drawn, if the McGrath study were performed on·a panel drawn according to the new procedures, the new study would produce the same results. Appellants then asked the court to permit a statistician to testify concerning the statistical significance of the McGrath study. Appellants also requested permission to conduct a survey, similar to the original McGrath study, of their trial jury panel. The superior court denied these requests as well as denying the motion to quash the panel.

■ In Green v. State,[12] we held that an accused in a criminal proceeding is entitled to a jury "drawn from a fair cross section of the community."[13] Both the Constitution of the United States and Alaska's Constitution mandate that jury selection procedures operate free of discrimination.[14] However, the burden is on the accused to establish a prima facie case of purposeful discrimination. Once a prima facie case is made out, the burden of persuasion "shifts to the state to rebut the presumption of unconstitutional action . . . ."[15]

■ It is our view that the appellants failed to make a prima facie showing of purposeful discrimination. Appellants failed to offer proof of any actual discriminatory intent on the part of the jury selection officials, nor did they offer any proof that black and poor persons were systematically excluded from jury service.[16] The then five-year-old McGrath study was conducted upon a single jury panel drawn from a population base quite different from that which served as the source for the jury panel in the instant case. The evidence simply did not sufficiently prove or raise an implication of significant underrepresentation of blacks or poor persons in the jury venire. Therefore, we hold that the court did not err by refusing their motion to quash.

■ Additionally, the appellants contend that the trial court denied them due process of law by not permitting the statistician to testify and by denying them the opportunity to conduct a survey of the jury panel in the case at bar. In a criminal case, it is error to refuse to grant a full hearing on a charge that the jury has been improperly constituted.[17] We think the trial court accorded the appellants ample

---

less than $9,000 per year, whereas in Anchorage community at large, 33 percent earned less than $9,000. He further stated that 65 percent of the non-white population earned less than $6,000, compared to 5 percent of the jury panel who earned less than that amount.

11. Ch. 67, § 1 SLA (1969), as amended, AS 09.20.050(b) (1972 Cum.Supp.).

12. 462 P.2d 994 (Alaska 1969).

13. *Id.* at 997.

14. Ballard v. United States, 329 U.S. 187, 193, 195, 67 S.Ct. 261, 91 L.Ed. 181; Thiel v. Southern Pacific Co., 328 U.S. 217, 220–225, 66 S.Ct. 984, 985–988, 90 L.Ed. 1181, 1184–

1187 (1946); Hernandez v. Texas, 347 U.S. 475, 477–482, 74 S.Ct. 667, 669–672, 98 L. Ed. 866, 869–872 (1954).

15. Alexander v. Louisiana, 405 U.S. 625, 631–632, 92 S.Ct. 1221, 1225–1226, 31 L.Ed.2d 536, 542 (1972); Whitus v. Georgis, 385 U.S. 545, 550, 87 S.Ct. 643, 646, 17 L.Ed.2d 599, 603–604 (1967).

16. Malvo v. J. C. Penney Co., Inc., 512 P.2d 575 (Alaska 1973).

17. Glasser v. United States, 315 U.S. 60, 87, 62 S.Ct. 457, 472, 86 L.Ed. 680, 708 (1942); Carter v. Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 689, 44 L.Ed. 839, 841 (1900).

opportunity to air their claim that the poor and blacks were significantly underrepresented. In particular, we think that it was appropriate for the trial court to exclude the proposed testimony of the statistician since that testimony, too, was to be based on the 1966 McGrath study. The statistician's testimony suffered the same infirmities of irrelevance as did the other evidence based upon the McGrath study. Moreover, a trial judge is not bound to hear cumulative testimony on a single point, and may in his discretion limit the reception of such evidence.[18]

■ Appellants also claim that it was error for the trial court to decline to wait until they had canvassed the list of veniremen for information relating to its racial and economic composition before selecting jurors. Had appellants wished to prepare statistical evidence that certain classes had been excluded from the venire, they could have done so in advance of trial. Appellants failed to make any prima facie showing of discriminatory composition of the venire before requesting permission to canvass the panel. We conclude that the superior court acted properly in refusing to further defer the jury selection.

In sum, we find that appellants failed to make a prima facie showing that blacks and poor persons were substantially underrepresented on the jury panel, and we further hold that appellants were not denied a fair opportunity to present their claim of jury discrimination before the trial court.

### III

Appellants next argue that the trial court improperly instructed the jury on reasonable doubt. Appellants' Proposed Instruction No. 3 provided in part:

It is not required that the government prove guilt beyond all possible doubt.

The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs.

The trial court instructed the jury as follows:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption placed upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relative to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. *It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.* (Emphasis added.)

Appellants claim that the trial court instructed the jury to convict if the jurors felt "morally certain" the appellants were guilty, and that the instruction therefore conflicts with the proposition that verdicts should be "based on reason, and not on the jury's view of morality."[19]

■ A number of courts have criticized jury instructions which attempt to define "reasonable doubt" in terms of proof to a "moral certainty."[20] We think that an instruction which attempts to express the

18. Lewis v. Southern Pac. Co., 102 Ariz. 108, 425 P.2d 840, 842 (1967); Hartman v. Port of Seattle, 63 Wash.2d 879, 389 P.2d 669, 674 (1964); cf. Ferrell v. Baxter, 484 P.2d 250, 267 (Alaska 1971); Saslow v. Rexford, 395 P.2d 36, 40 (Alaska 1964).

19. Alaska R.Crim.P. 30(b)(3) requires the trial court to instruct the jury on "reasonable doubt," but leaves the term "reasonable doubt" undefined.

20. *E. g.*, United States v. Acarino, 408 F.2d 512, 517 (2d Cir.), cert. denied, 395 U.S. 961,

meaning of "reasonable doubt" in terms of "moral certainty" is likely to raise more questions than it puts to rest in the minds of jurors. In our view the instruction suggested by the Supreme Court in Holland v. United States is preferable: a doubt that would cause prudent men to hesitate before acting in matters of importance to themselves.[21]

But the instruction given by the superior court is also an accepted one.[22] Contract to the implication of appellants' argument, this instruction does not require the jury to rely solely on their moral convictions in determining reasonable doubt. Rather, it properly instructs the jury to employ their reasoning processes in determining whether they have a doubt as to the proof of guilt. The instruction was not of the type that could "mislead the jury into finding no reasonable doubt when in fact there was some."[23] Taken as a whole, the instruction defined reasonable doubt in a permissible fashion.

Appellants also challenge the superior court's failure to inform the jury that the state must prove each element of the crime of robbery beyond a reasonable doubt. However, appellants did not object at trial to the court's failure to so instruct the jury. Alaska Criminal Rule 30(a) provides in part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections.

Therefore, appellants are foreclosed from raising this objection, unless we hold that the trial court's instructions constituted "plain error." Alaska Criminal Rule 47(b) permits, but does not require, this court to notice errors which were not brought to the attention of the superior court.[24] We favor instructions which inform the jury that the state must prove each element of the offense beyond a reasonable doubt.[25] However, here, the trial court properly defined reasonable doubt for the jury and defined all elements of the crime of armed robbery. We do not think that the alleged error was so serious and manifest as to constitute plain error.[26]

IV

Appellants then assert the trial court committed prejudicial error by failing to give the jury a cautionary instruction in accordance with Alaska Criminal Rule 30(b)(2) which provides in part that:

[T]he court . . . shall give the following basic instructions on all proper occasions:

.   .   .   .   .   .

(2) That . . . the oral admissions of a party [ought to be viewed] with caution.

89 S.Ct. 2101, 23 L.Ed.2d 746 (1969). United States v. Franzese, 392 F.2d 954, 964–965, (2d Cir. 1968); United States v. Byrd, 352 F.2d 570, 575 (2d Cir. 1965); State v. Harris, 107 Ariz. 41, 481 P.2d 504, 508 (1971). In United States v. Byrd, the trial court instructed the jury on the meaning of reasonable doubt by explaining that, "It is doubt to a moral certainty." On appeal the Court of Appeals said:
'Doubt' and 'certainty' are antithetical and, in our opinion, the use of them in this manner and for this purpose would tend to create more confusion than light in the minds of the jury.
352 F.2d at 575.

21. 348 U.S. 121, 140 75 S.Ct. 127, 137, 99 L.Ed. 150, 167 (1954).

22. California Jury Instructions—Criminal, § 2.90, at 67 (3d ed. 1970). See also Friedman

v. United States, 381 F.2d 155, 160–161 (8th Cir. 1967).

23. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167 (1954).

24. Alaska R.Crim.P. 47(b) provides:
Plain errors or defects affecting substantial rights may be noted although they were not brought to the attention of the court.
See generally Wright, Federal Practice and Procedure §§ 484, 856 (1969).

25. Johnson v. United States, 100 U.S.App.D. C. 333, 244 F.2d 781, 782 (1957).

26. People v. Reed, 38 Cal.2d 423, 430, 240 P. 2d 590, 595 (1952); accord: People v. Orchard, 17 Cal.App.3d 568, 576–577, 95 Cal. Rptr. 66, 71 (1971).

**644**

The Averys do not, however, point to the testimony of any witness which related an admission on their part.

In Bakken v. State [27] we held that the trial court's failure to give the jury a Rule 30(b)(2) instruction was so clearly prejudicial that it constituted plain error. Appellants attempt to fit themselves within the scope of *Bakken*. In that case Bakken was accused of statutory rape. During the course of his trial, Bakken testified to his innocence, and others testified to his veracity and good reputation. Only two witnesses testified to his guilt. David Johansen testified that he had seen Bakken and the putative victim "making out" in the living room of a house where the two were attending a party, and that for awhile thereafter Johansen did not see either of them. According to Johansen, the next time he saw Bakken in the living room, Bakken had said:

> Who has she been with? She sure is big. I was in it from the time I went in [the room] until I came out. 489 P.2d at 122.

The victim presented conflicting testimony, inculpating Bakken and another person. The trial court failed to give the jury the mandatory cautionary instruction concerning Johansen's testimony.

Reversing the conviction we said:

> Given the closeness of the case and the importance of Johansen's testimony concerning Bakken's purported admission, we believe that the trial court's failure to give this mandatory instruction was . . . prejudicial. (Footnote omitted.)[28]

■ However, the instant case is easily distinguishable from *Bakken*. Here, there were no "oral admissions" of the Averys in evidence. Thus we conclude that, under the circumstances, the trial court's failure to give a Rule 30(b)(2) instruction did not constitute reversible error.

### V

Despite the objection of appellants' counsel, the trial court permitted Officer Weaver to testify about a conversation he had with an out-of-court declarant three weeks prior to the robbery.

> Q. Now, Mr. Weaver, you testified that you had a conversation with Mr. Norris on January 21st, 1971 and you've already told us the subject matter of that conversation. Now, I ask you did you have previous to that night a conversation with the same individual, Al Norris?
>
> A. Yes, sir, I did.
>
> Q. And would you relate to the jury what the subject matter of that conversation was?
>
> A. The subject matter of that conversation were the Avery brothers, Jimmy, and his brother, David, and their presence in Anchorage and their intentions to commit armed robbery.

At this point in the trial the court instructed the jury that the testimony was not admitted for the truth of the matter asserted; but rather for the purpose of explaining Weaver's state of mind in deciding to contact the appellants in connection with his investigation of the robbery. The trial judge cautioned the jury in the following manner:

> I'll advise the jury that the testimony just given concerning an out of court declaration by Mr. Norris is not offered with [sic] the truth of the matter asserted. It's offered solely for the purpose of explaining Officer Weaver's state of mind and his actions and you are to draw no inferences from it whatsoever as to the truth or falsity of the other man's statements.

It is our view that Officer Weaver's testimony amounted to inadmissible hearsay. Professor McCormick states:

> In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or search or seizure, by stating that he did so "upon

---

27. 489 P.2d 120 (Alaska 1971); *cf.* Daniels v. State, 388 P.2d 813, 816 (Alaska 1964).

28. 489 P.2d at 125.

information received" and this of course will not be objectionable as hearsay, but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it will be excluded as hearsay.[29]

Many courts follow this view.[30] The state, however, relies upon our statement in Tracey v. State [31] that an out-of-court utterance is not hearsay when offered without reference to its truth in order to show the process of police investigation.

In *Tracey* the investigating officer testified that he had called the Military Police at Fort Richardson to check their roster for names beginning with the letters "T-R-A-C." The witness then testified that Fort Richardson informed him that they had a person listed with the name "Tracey." The defendant objected to the admission of this testimony on grounds that it was hearsay. The court upheld the admission of the testimony on the grounds that it was not admitted to prove the truth

of the out-of-court statements, but merely to establish the circumstances that justified the police officer's investigation of the defendant.

However in the instant case, even though the challenged hearsay was relevant to the determination of some fact of consequence,[32] we think that any probative value it may have had was outweighed by its potentially prejudicial impact on the appellants' defense.[33]

On the other hand, we conclude that admission of Weaver's hearsay testimony was harmless error. Under the standard adopted in Love v. State,[34] in order to find the admission of Weaver's testimony harmless error we must be able to fairly say that the questioned testimony did not appreciably affect the jury's verdict. On the basis of our careful review of the entire record of the four-day trial, we hold that the admission of Officer Weaver's questioned testimony was harmless error under the standard of *Love*. Within the total evidentiary context of the trial we

---

29. C. McCormick, Law of Evidence § 227, at 463 (1954) (footnotes omitted).

30. *E. g.*, United States v. Barash, 365 F.2d 395, 399–400 (2d Cir. 1966), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969) ; Landsdown v. United States, 348 F. 2d 405, 412–413 (5th Cir. 1965) ; Graham v. United States, 257 F.2d 724, 730 (6th Cir. 1958) ; Smith v. United States, 70 App.D.C. 255, 105 F.2d 778, 779 (1939).

31. 391 P.2d 732, 734 (Alaska 1964).

32. ALI Model Code of Evidence, Rule 1(12) (1942), defines "Relevant Evidence" to mean :
[E]vidence having any tendency in reason to prove any material matter and includes opinion evidence and hearsay evidence.
Fed.R.Evid. 401 (proposed rules, 1973), defines "Relevant Evidence" slightly differently :
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

33. Gafford v. State, 440 P.2d 405, 408 (Alaska 1968), cert. denied, 393 U.S. 1120, 89 S. Ct. 996, 22 L.Ed.2d 125 (1969). *Compare*

Kugzruk v. State, 436 P.2d 962 (Alaska 1968).
Fed.R.Evid. 403 (proposed rules, 1973), provides :
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice*, confusion of [undue delay], waste of time, or needless presentation of cumulative evidence. (Emphasis added.)
Alternatively, ALI Model Code of Evidence Rule 303(1) (1942), provides :
The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will
(a) necessitate undue consumption of time, or
(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or
(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.
*Accord*, United States v. Kearney, 136 U.S. App.D.C. 328, 420 F.2d 170, 174 (1969). *See also* McCormick on Evidence § 185 at 439 (2d ed. 1972).

34. 457 P.2d 622, 629–633 (Alaska 1969).

cannot say that the error in admitting this testimony substantially swayed the jurors.

## VI

For their final point in this appeal, appellants argue that the 15-year terms of imprisonment imposed upon their convictions of the crime of robbery are excessive sentences.

During the sentencing proceedings, the trial judge made the following statements which appellants point to as supporting their assertion that the judge employed impermissible criteria in determining the sentences which were imposed. At one point the trial judge stated:

> The only reasonable conclusion is that they found beyond a reasonable doubt that you and your brother went to that liquor store, with a gun, where you held it up and shot 2 women. I have to follow the verdict of that jury unless it's totally beyond reason.

At another point the following statement was made:

> I haven't the slightest doubt that at that time and at that place the defendants and each of them pursuant to a plan went to the liquor store, confronted the clerk of the store with a gun, obtained money from the clerk, and without even the slightest provocation, without any threat or force from the clerk, or any external source, simply shot her.[35]

The gist of appellants' sentence appeal argument is that the trial court "effectively found . . . [them] guilty of a crime for which they were indicted and tried but for which a jury would not convict them." At the outset of this opinion we noted the fact that after four days of trial the jury was unable to arrive at any verdicts against either Avery as to the two separate counts of shooting with intent to kill.

In State v. Chaney,[36] we held that "we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did." [37] Review of the record could well lead to the conclusion that the sentencing court was not clearly mistaken in sentencing appellants to maximum terms of imprisonment for the crime of robbery. But this conclusion would not be reflective of the full scope and extent of our appellate obligations in reviewing sentencing appeals. In *Chaney* we also stated, in part, that it is our duty to examine the proceedings below to review the excessiveness or leniency the sentence imposed by the trial court, in the light of "the nature of the crime, the defendant's character . . . the need for protecting the public . . . [and] the manner in which the sentence was imposed, including the sufficiency and accuracy of the information upon which it was based." [38]

Study of the sentencing proceedings raises the probability that the trial judge placed undue emphasis, in fashioning the sentences, upon counts in the indictment as to which the jury was unable to reach any agreement.[39] Given this circumstance, we

---

35. Additionally, the trial court remarked:
> I have to ask myself what did Willie and Dewey Gray do that the Avery brothers didn't do?

The Gray brothers were convicted of the murder of an Anchorage police officer. Gray v. State, 463 P.2d 897 (Alaska 1970).

36. 477 P.2d 441 (Alaska 1970).

37. *Id.* at 444.

38. *Id.* at 443 (footnote omitted).

39. In Waters v. State, 483 P.2d 199, 203 (Alaska 1971), we stated:
> There is also an indication that the sentencing judge assumed as an established

fact that appellant had sold heroin as charged in the second count of the indictment even though this count had been dismissed . . . . The dangers inherent . . . in giving undue weight to such factors should be readily apparent to the trial judge. More obvious is the fact that absent a conviction, an indictment is absolutely no evidence of guilty conduct.

*Accord,* Robinson v. State, 492 P.2d 106, 107 (Alaska 1971); Peterson v. State, 487 P.2d 682, n. 1 (Alaska 1971).

*See,* Hixon v. State, 508 P.2d 526 (Alaska 1973). The court held that use of verified information to which defendant admitted was permissible to be used in sentencing.

consider it appropriate to remand the case to the superior court to review the sentences imposed, and to hold such further sentencing proceedings as are deemed necessary.

The judgments and convictions of robbery are affirmed and the case is remanded for further sentencing proceedings in accord with this opinion.

FITZGERALD, J., not participating.