521 P.2d 990

**The STATE of Arizona, Appellee,**

v.

**Robert Tate KASOLD, Appellant.**

**No. 2818.**

Supreme Court of Arizona,
In Division.

April 17, 1974.

Gary K. Nelson, Atty. Gen., by Shirley H. Frondorf, Special Asst. Atty. Gen., Phoenix, for appellee.

Derickson & Kemper, by James Hamilton Kemper, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crime of molestation of child, § 13–653 A.R.S., and a sentence thereon of not less than twenty years nor more than life imprisonment.

We are asked to consider four questions on appeal:

1. Did the trial court commit reversible error in denying defendant's motion to suppress the fruits of a search warrant?

2. Was there improper foundation for the admission of some thirteen photographs?

3. Did the court commit error in denying the defendant's motion to hold a competency hearing on the question of the victim's ability to testify?

4. Does the evidence support the verdict and judgment?

The facts necessary for a determination of this matter on appeal are as follows. Sometime during the month of July, 1971, while the defendant's wife and family were away on vacation, the defendant took a series of photographs, with the help of a self-timer, of the defendant and a mentally retarded neighborhood girl, then eight years old. The photographs show the defendant and the neighbor girl in various poses, one in which the little girl is watching cartoons on TV while the defendant is kneeling behind her fondling his private parts. There are three photographs of the little girl seated on the floor in the defendant's living room while the defendant stands over her and appears to be masturbating. Three photographs have them seated next to each other on the couch with the defendant's private parts exposed through his open fly. During all of this time the defendant was dressed in a pair of cutoff shorts. Two photographs show the defendant seated on the floor near the couch with his private parts exposed and the defendant appears to be rubbing the private parts of the little girl, although the little girl is dressed and the defendant has his hand on her shorts. Three other photographs show the little girl standing on her head with her legs spread apart and the defendant standing above her with his penis pointed to, but not touching, her private parts or clothing. The last photograph in the evidence shows the defendant with his pants around his knees, his private parts exposed, and the little girl doing a headstand in front, facing backwards, and he is holding her legs spread apart. In all of the photographs the victim is clothed.

This is a companion case to State v. Kasold, No. 2819, 110 Ariz. 563, 521 P.2d 995, filed this day. As a result of the search warrant in the companion case, the police obtained the roll of undeveloped film. When the film was developed, the police were able to identify the victim as a neighbor girl. Motion to suppress was denied, and the pictures were admitted into evidence based upon the testimony of the victim's mother. The defendant testified on his own behalf and admitted the taking of the pictures contending:

"A   Are you asking my intent in taking the photographs? What I was trying to accomplish?

"Q   That is precisely what I am asking you.

"A   I thought that it would be a challenge to take photographs in which

I would be exposed without the knowledge of the other person present. And—

"Q When you say 'exposed' you mean sexually exposed?

"A Yes.

"Q All right, go on.

"A It was not my intention that anybody ever should see that. Certainly not Mona, at that time, on that day, and certainly not the people who have since seen these photographs.

It became sort of a contest, I suppose. The camera was there and it was loaded.

I had no intention of nor did I harm Mona in any way either mentally or physically, but it became, I suppose, sort of a private act of exhibitionism. I never made these photographs. I never processed the film. It was never my intention that anyone else would ever see what took place that day, "but, as Mr.—as the prosecutor has said, the camera did a faithful job."

The defendant contended that at all times during the taking of the pictures that the victim never saw him exposed. Defendant also denied that he ever touched the private parts of the body of the victim. For example:

"Q Would you explain that to the jury, please?

"A I don't understand.

"Q What was your purpose in putting your left hand between Mona's legs?

"A Well, I had taken by that time nine previous exposures and I had a 20-exposure roll of film. I realized I couldn't shoot anything else on that roll of film. I wasn't going to mix lightning in this, anything like this, and I guess I was running out of poses. This is to simulate some sort of sexual gesture, I suppose.

"Q In that photograph is your hand in fact touching the private parts of—

"A No. If I had touched her I would have drawn her attention.

"Q How close did you come to touching her?

"A I suppose an inch or so, maybe, two, depending on the parts of my hand, probably about like this (indicating)."

The victim was called but not allowed to testify. The jury was also instructed on the offense of contributing to the delinquency of a minor (§ 13–822 A.R.S.), but the jury returned a verdict of guilty as charged.

## SEARCH AND SEIZURE

We have discussed the matter of the search warrant in the companion case of State v. Kasold, No. 2819, 110 Ariz. 563, 521 P.2d 995, filed this day, and have held that the search warrant was a proper warrant, and the items seized thereunder were admissible. It makes no difference that the information obtained leads to a different crime than that which the officers believed to have taken place when the search warrant was obtained. State v. McMann, 3 Ariz.App. 111, 412 P.2d 286 (1966).

## ADMISSION OF THE PHOTOGRAPHS

We find no error in the admission of the photographs despite the defendant's claim of lack of proper foundation. The mother was able to identify both the victim and the defendant, and the jury was able to identify the defendant from the pictures. The defendant described himself as an amateur photographer and we believe that his pictures accurately portray what he intended them to portray. We find no error.

## TESTIMONY OF THE VICTIM

The defendant, testifying in his own behalf, stated:

"Q You are telling the jury you are innocent of this charge, is that right?

"A Yes, I am.

"Q  Are you telling the truth?

"A  Yes, I am.

There are two people who can testify as to what happened that day, the so-called victim, Mona, and myself, the defendant.

I don't know why Mona hasn't testified. I know it is not because she is too mentally retarded, because I have talked with her many times and she is perfectly capable of expressing her thoughts and her recollections.

On the other person, I am the other person and, of course, I am the defendant. I requested a lie detector test to verify that I am telling the truth as I understand it."

At the conclusion of the defendant's case, the prosecutor indicated his desire to call Mona Whiting to the witness stand in rebuttal. Defendant's counsel objected to the girl being called into the courtroom at all, and asked that a preliminary hearing in chambers be held to determine the girl's competency to testify as a witness. The record reflects the following:

"MR. McDONALD: Yes, Your Honor, the State has rebuttal. The first witness the State would call would be Mona Whiting.

(Mona Whiting entered the courtroom and went to the Clerk's desk but would not be sworn when requested by the Clerk.)

"THE COURT: Ladies and gentlemen, we will take a short recess.

(Court was recessed at 2:55 p. m. and the following proceedings took place outside of chambers immediately thereupon, with the Court, Mr. McDonald and Mr. Kemper present:)

"MR: KEMPER: I would like the record to reflect Mr. McDonald is here to agree or disagree with me that the girl was brought into the courtroom after. her name was called, that she was in the company of her father, that she was clutching him with her arm around his waist and apparently his arm was around her shoulder, that she was taken to the Clerk's stand to be sworn in, and I personally did not hear her say anything, although I heard Mr. Cioni try to talk to her. The Judge was in front of her, maybe he heard something, but it seemed to me it was so highly prejudicial we would move for a mistrial. We feel that the defendant cannot get a fair trial if this girl is dragged into the courtroom like an exhibit or something.

"MR. McDONALD: My response—

"MR. KEMPER: This all could have been avoided by having the hearing we asked for in the first place and that was the purpose of it.

We would ask the Court grant a mistrial.

"MR. McDonald: In response, I was advised prior to bringing that girl into the courtroom today, and I would avow to the Court, by the girl's mother, that during their conversations over the weekend, since Friday, the little girl had indicated to her mother that if the occasion arose that she were to take the stand and give testimony that she would by a nod of the head designate whether the defendant had touched her.

Prior to going in there today, it was my belief that the girl would at least go and raise her hand, assume the witness stand. However, I think that the point in her not going in there is not prejudicial. The trial judge witnessed the entire incident. I think that it effectively impeaches what the defendant's own statements were, made in the presence of the jury during his testimony, that this little girl was competent to come in and state the other side of the story.

"THE COURT: Anything else you want to add?

"MR. KEMPER: No.

"THE COURT: Mona's first appearance in court did not indicate she could not testify. The testimony of the witnesses indicates that she probably could testify.

Her conduct moments ago indicated a very frightened, very shy, little girl, and I will proceed with the competency hearing out of the presence of the jury to determine whether or not she really can testify to the facts in issue.

The motion of the defendant for a mistrial is denied."

After the competency hearing in chambers, the court determined that the little girl should not be allowed to testify.

Our statutes state:

"The following shall not be witnesses in a civil action:

\* \* \* \* \* \*

"2. Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly." § 12–2202(2) A.R.S.

And:

"The laws for determining competency of witnesses in civil actions are also applicable to criminal actions and proceedings, except as otherwise provided by this chapter." § 13–1801 A.R.S.

Rule 43(c) of the Rules of Civil Procedure, 16 A.R.S., reads as follows:

"Examination by court as to disqualifications. When a child under ten years of age, or person apparently of weak intellect, is called as a witness, the court may examine him to ascertain his capacity, and whether he understands the nature and obligation of an oath."

■ Although Rule 43(c) would appear to provide that a child under ten years of age may be called as a witness before the court conducts a competency hearing, as was done here, we believe the order in which this occurs is left to the discretion of the trial judge. In State v. Harris, 107 Ariz. 41, 481 P.2d 504 (1971), we impliedly approved the procedure of conducting the hearing out of the presence of the jury before ruling that the witness could be called. In the instant case the witness was called first and under Rule 43(c) we find no error. Also, the defendant contended on the stand that the witness was capable of testifying as to the facts indicated, and it was proper to allow the jury to at least see the witness and her demeanor to ascertain themselves whether or not the witness could testify as the defendant contended she would have been able to do. We find no error.

## SUFFICIENCY OF THE EVIDENCE

■ The defendant at oral argument raised the question of the sufficiency of the evidence to support a conviction for child molestation. The testimony of the State is unique in that it consisted of the introduction of the photographs of the defendant, plus some foundational material which went to the identity of the victim and her mental state. Thus, the only evidence upon which the conviction is based are the photographs previously described.

In at least four of the photographs the jury could believe that there was a touching of the private parts of the victim through her shorts, and in at least several of the other pictures the victim would most certainly have seen the defendant exposed. It is contended by the defendant that neither of these things happened. We believe that the jury was able to reasonably infer from these pictures that the defendant did in fact commit the acts for which he was charged, and that the court properly denied the motion for directed verdict at the end of the State's case as well as the motion for acquittal. We cannot restrain ourselves from stating that this is a case in which one picture is worth a thousand words.

Judgment and sentence affirmed.

STRUCKMEYER and HOLOHAN, JJ., concur.